# IN THE SUPREME COURT OF IOWA

No. 15–1606

Filed June 23, 2017

**STATE OF IOWA,**

Appellee,

vs.

**CHRISTOPHER CLAY McNEAL,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Pottawattamie County, Kathleen A. Kilnoski (pretrial), Richard H. Davidson (trial), Judges.

The State seeks further review of a court of appeals decision reversing the defendant's convictions on speedy trial grounds and remanding for dismissal. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Mark C. Smith, State Appellate Defender, Shellie L. Knipfer, Assistant Appellate Defender, and Corey Stone, Law Student, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, and Matthew Wilber, County Attorney, Amy Zacharias, Jon Jacobmeier, and Christine M. Shockey, Assistant County Attorneys, for appellee.

**MANSFIELD, Justice.**

In this case, we are asked to review a district court's decision to commence a criminal trial on June 26 but to postpone the presentation of evidence to July 7, eight days after the June 29 expiration of the speedy trial deadline. The court granted this postponement at the State's request based on the unavailability of medical experts.

On our review, we conclude the district court did not abuse its discretion. We assume without deciding that the district court's use of a start-and-stop procedure to avoid the speedy trial deadline should be analyzed under the same standards as a straightforward extension of the speedy trial deadline. Nevertheless, under that law, we find that the court acted within its discretion. In addition, we conclude the defendant's other appeal issues are without merit. Accordingly, we vacate the decision of the court of appeals and affirm the defendant's convictions and sentence.

## I. Background Facts and Proceedings.

On February 22, 2015, Matthew Browning was working alone in a tool shop. The defendant, Christopher McNeal, entered the shop and began repairing a wheelchair that he had dropped off earlier. Browning asked McNeal to leave because the shop's owner did not want McNeal there. McNeal ignored him, kept working on the wheelchair, and asked Browning if he had any drugs to share. Browning replied that he did not. Browning again asked him to leave, this time using a raised voice and gesturing to McNeal with a sledgehammer in hand. The next thing Browning remembered was McNeal leaving the shop. Browning awoke hours later with blood frozen to his face and feeling "[t]errible." One of the sledgehammers from the shop went missing that night and was never located.

Browning was eventually diagnosed with an epidural hematoma and a lineal fracture in his skull based on an examination by Dr. John Treves. Several days after the assault, Browning told the owner of the shop, "Oh God. [McNeal] hit me in the head with a hammer." Later, Browning saw McNeal and confronted him, asking McNeal why he would "do something like that." McNeal replied, "Well, you were shaking a hammer at me. I just beat you to it."

When McNeal was interviewed by police, he claimed he was not at the shop at all that day. Asked where he was instead, McNeal responded that he "get[s] around" and was at the "other end of town."

On March 30, the State charged McNeal with attempted murder, *see* Iowa Code § 707.11(1) (2015), first-degree burglary, *see id.* § 713.3(1)(*c*), willful injury resulting in serious injury, *see id.* § 708.4(1), assault while participating in a felony, *see id.* § 708.3(1), and assault with a dangerous weapon, *see id.* § 708.1(2)(*c*). The State also gave notice that it would seek the mandatory five-year minimum sentence of confinement if the jury found that McNeal was in possession of a "dangerous weapon," i.e., a sledgehammer, while committing a forcible felony. *See id.* § 902.7. McNeal pled not guilty and demanded a speedy trial pursuant to Iowa Rule of Criminal Procedure 2.33(2)(*b*). The speedy trial deadline in this case was June 29.[1]

Trial was set for June 9. However, on that date, the following exchange took place regarding plea negotiations:

---

[1]The parties seem to have assumed that the speedy trial deadline ended on Friday, June 26. However, there is no dispute that Sunday, June 28 was ninety days from March 30. Iowa Rule of Criminal Procedure 2.33(2)(*b*) therefore required the trial to commence by Monday, June 29, unless good cause was shown. *See State v. Johnson*, 216 N.W.2d 335, 336–37 (Iowa 1974); *see also* Iowa Code § 4.1(34).

> THE COURT: This case is set for trial this morning. What are we doing?
>
> MR. TENNY: Well, Your Honor, there has been a plea agreement offered by the State. And as I -- initially Mr. McNeal was considering it, but as of last night, I understand he no longer wishes to accept that plea agreement. He's asked the State if they would consider a total of five years, concurrent on everything; and from what I understand, the State is not agreeable to that.
>
> . . . .
>
> THE COURT: So you're wanting to just make a record on the plea offer?
>
> MR. TENNY: Right. And I've explained all of this. I was at the jail last night until 6:00 p.m. talking with Mr. McNeal about this offer and -- and I also explained that there's a potential at risk that it could turn out way worse for him if he's convicted of any of the larger charges, you know, total.

Under the proposed plea agreement, McNeal would have pled guilty to willful injury causing serious injury in this case and willful injury causing bodily injury in an unrelated case. *See id.* § 708.4(1), (2). All remaining charges would be dismissed. Neither of those charges would carry a mandatory minimum term of incarceration, and the State would recommend concurrent sentences, resulting overall in an indeterminate ten-year sentence. Conversely, if the offer was rejected, the State informed McNeal that it would proceed with all the charges in the trial information, request consecutive sentences, and seek the dangerous-weapon-forcible-felony enhancement. Notably, the attempted murder charge carried a mandatory minimum term of seventeen and one-half years in prison. *See id.* § 902.12(2).

On the record, McNeal rejected the plea agreement. At the same time, he declined to waive the speedy trial deadline. Accordingly, the trial was rescheduled to June 23.

Before then, on June 16, the parties returned to court. The lead prosecutor explained,

> [I]t was our understanding as [McNeal] came to court last week that we had a plea deal. And then on the 9th of June, pretty much everything fell apart in terms of the defendant wishing to take the plea offer that was made.
>
> And so the State then has been working since that time to schedule the expert witnesses in this case that we have. . . . [W]e have been unable to nail down times that our -- where our experts are available in this case. The State understands that -- And when I say available, I mean next week, because we're supposed to start trial on Tuesday, June 23rd. . . .
>
> Now, there are, I think, five to seven doctors named on the trial information. The three that we need to prove the elements in this case of the serious injury are unavailable. One is in Europe, one is a neurosurgeon and is in surgery next week and can't inconvenience, obviously, the people that need brain surgery, and the other is a radiologist that is unavailable because of work commitments, as well.

The prosecutor went on,

> [W]e're in a little bit of flux in terms of what our schedule is. This is certainly not a situation that the State would normally find itself in or want to find itself in, to be noticing witnesses this late. But because of the representation or understanding that the plea offer was going to be taken, we simply had not noticed or attempted to schedule these witnesses to come in for trial, you know, as of last week.

The State added that one of the three witnesses would not be back from Europe until June 30. That witness was Dr. Crystal Seluk, a physician who had been listed with the original minutes of testimony on March 30. The State proposed that a jury could be selected on June 23, and the case could then be continued "until such time as the State is able to then schedule [the] expert witnesses."

At this point, the parties made a record once more on the State's plea offer and the defendant's unwillingness to accept that offer.

The court then asked the defense to address the State's proposal to have the jury picked on June 23 followed by a recess until the experts were available. At first, defense counsel did not respond to this proposal, but instead asked the State to reconsider a single indeterminate five-year

sentence to resolve all charges. The State again declined this counteroffer, citing "the facts in this case . . . and the injuries to the victim."

Defense counsel then explained that the State's plea offer had not arrived until June 2. Initially, the defendant had intended to accept it, and preparations had been made on both sides for a plea hearing to occur on June 9. However, the defendant had "a change of heart" on June 9.

Defense counsel objected to the State's proposal to take a trial hiatus for the expert witnesses. Defense counsel claimed the State had known about these witnesses all along but had not listed them until after June 9. (This was partially incorrect because the original minutes of testimony included Dr. Seluk.) Defense counsel added that "everyone knows that medical personnel are difficult to get to court." Defense counsel urged,

> Now, the State can present whatever witnesses they have on June 23rd, those who are available, and present their case in that way, or this -- it would be a good reason to settle the case, as -- as we've -- you know, as we're requesting.

The prosecutor responded by correcting the record as to Dr. Seluk. She explained, "Dr. Seluk had been named all along and yet is still unavailable." The prosecutor added that it would have been "horribly inconvenient" to have medical professionals scheduled to show up on June 9 when both sides thought a plea was going to be entered.

After hearing these arguments, the court concluded, "I think it's clear, with one of the doctors out of the country from June 23rd until June 30th, that's a problem. And I think there is a good cause to adjust the scheduling of the trial." The court thus ordered that the jury could

be impaneled on June 23, but that proof would not commence until July 7. Yet the court added,

> [W]e need to get them going July 7, at the very latest. And if there's still a doctor in Europe or one doing surgery or whatever it is, you'll just have to subpoena them and get them here on that day or do without them.

On June 23, a prosecutor made allegedly improper comments during jury selection for a different case. Because the venire was also going to be used to select the jury for McNeal's case, McNeal moved for a mistrial. The district court granted the motion and reset jury selection for June 26. At approximately 12:30 p.m. on the 26th, a jury was selected, sworn, and admonished.

Eleven days later, on July 7, the State called four witnesses, including Dr. Treves, the neurosurgeon who had examined Browning at the hospital, but not including Dr. Seluk. The defense did not call any witnesses. Following closing arguments, the jury received the case at approximately 4:45 p.m. That evening, the jury returned a verdict, finding McNeal guilty of the lesser included offenses of assault with intent to inflict serious injury, criminal trespass, and willful injury causing serious injury. The jury also found that McNeal was in possession of a dangerous weapon at the time of the assault.

The assault conviction merged with the willful-injury-causing-serious-injury conviction. On the latter conviction, due to the weapon enhancement, McNeal received a ten-year sentence with a mandatory minimum term of incarceration of five years. *See id.* § 902.7. McNeal also received a concurrent one-year sentence on the criminal trespass charge.

McNeal appealed. He argued that the district court's June 16 order bifurcating jury selection from the rest of the trial should be

treated as an extension of the speedy trial deadline, for which good cause was lacking. McNeal also argued that the evidence was insufficient to sustain his convictions, that his trial counsel was ineffective in failing to object to evidence of his drug use or the admission of hearsay testimony, and that the district court erred in allowing a demonstrative sledgehammer to be shown to the jury. We transferred the appeal to the court of appeals.

The court of appeals found that the stop-and-start procedure did not have the effect of bringing McNeal to trial on June 26, before the expiration of the speedy trial deadline. It then determined there was no good cause shown for the delay granted by the district court to July 7 under speedy trial standards. It therefore reversed McNeal's convictions and remanded for dismissal without reaching his other appellate arguments.

We granted the State's application for further review.

**II. Standards of Review.**

We review a district court's application of the procedural rules governing speedy trial for correction of errors at law. *State v. Miller*, 637 N.W.2d 201, 204 (Iowa 2001); *State v. Finn*, 469 N.W.2d 692, 693 (Iowa 1991). The district court's findings of fact are binding upon us if supported by substantial evidence. *State v. Bond*, 340 N.W.2d 276, 279 (Iowa 1983). "Statutes and rules implementing the right to a speedy trial receive 'a liberal construction, designed to effectuate [their] purpose' of protecting citizens' liberty." *State v. Taylor*, 881 N.W.2d 72, 76 (Iowa 2016) (alteration in original) (quoting 21A Am. Jur. 2d *Criminal Law* § 930, at 187 (2016)).

We review a district court's determination whether the State carried its burden to show good cause for the delay for abuse of

discretion. *State v. Winters*, 690 N.W.2d 903, 907 (Iowa 2005). Nevertheless, a district court only has "circumscribed" discretion to hold a trial beyond the ninety-day deadline. *Id.* at 908 (quoting *Bond*, 340 N.W.2d at 279); *see Miller*, 637 N.W.2d at 204 ("The trial court's discretion to avoid dismissal under [the rule] is circumscribed by the limited exceptions to the rule's mandate.").

"Sufficiency of evidence claims are reviewed for correction of errors at law, and we will uphold a verdict if substantial evidence supports it." *State v. Ramirez*, ___ N.W.2d ___, ___ (Iowa 2017). We review ineffective-assistance-of-counsel claims de novo. *State v. Parker*, 747 N.W.2d 196, 203 (Iowa 2008). "[T]he court may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief." *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015). Finally, rulings on demonstrative evidence are reviewed for an abuse of discretion. *State v. Thornton*, 498 N.W.2d 670, 674 (Iowa 1993); *State v. Henderson*, 268 N.W.2d 173, 179 (Iowa 1978).

**III. Even Assuming McNeal Was Not "Brought to Trial" Until July 7, the District Court's Finding of Good Cause Was Within Its Discretion.**

Iowa Rule of Criminal Procedure 2.33(2)(*b*) provides,

> If a defendant indicted for a public offense has not waived the defendant's right to a speedy trial the defendant must be brought to trial within 90 days after indictment is found or the court must order the indictment to be dismissed unless good cause to the contrary be shown.

For purposes of this appeal, we will assume without deciding that McNeal was not brought to trial on June 26, the date when the jury was impaneled and sworn. *But see State v. Jones*, 281 N.W.2d 13, 17 (Iowa 1979) ("We . . . now hold that a defendant is 'brought to trial' . . . when the jury is impaneled and sworn."). We will consider, rather, whether the

district court abused its discretion in finding "good cause to adjust the scheduling of the trial," measured against speedy trial requirements.

Our caselaw on the speedy trial requirements under rule 2.33(2)(*b*) is fairly well established. "We have made it clear that good cause 'focuses on only one factor: the reason for the delay.'" *Winters*, 690 N.W.2d at 908 (quoting *State v. Nelson*, 600 N.W.2d 598, 601 (Iowa 1999)). Yet because any "delay cannot be evaluated entirely in a vacuum," we also consider surrounding circumstances such as the length of the delay, whether the defendant asserted his right to a speedy trial, and whether prejudice resulted from the delay. *Miller*, 637 N.W.2d at 205 (quoting *State v. Petersen*, 288 N.W.2d 332, 335 (Iowa 1980)); *accord Winters*, 690 N.W.2d at 908. Hence, as we have explained, these surrounding circumstances essentially operate on a sliding scale:

> The shortness of the period, the failure of the defendant to demand a speedy trial, and the absence of prejudice are legitimate considerations only insofar as they affect the strength of the reason for delay. This means that, to whatever extent the delay has been a short one, or the defendant has not demanded a speedy trial, or is not prejudiced, a weaker reason will constitute good cause. On the other hand, if the delay has been a long one, or if the defendant has demanded a speedy trial, or is prejudiced, a stronger reason is necessary to constitute good cause.

*Miller*, 637 N.W.2d at 205 (emphasis omitted) (quoting *Petersen*, 288 N.W.2d at 335). We have noted that "most, if not all, cases justifying reversal based on speedy-trial violations involve delays numbering weeks or months, not days." *Id.*

Here, the postponement was relatively minimal—eight days past the speedy trial deadline. The defendant does not claim any resulting prejudice. Although these considerations do not eliminate the State's duty to show a valid reason for the delay, the reason does not have to be as strong.

The district court's good-cause finding is reviewed for an abuse of discretion, although that discretion is circumscribed:

> We review a trial court's ruling on a motion to dismiss based on speedy-trial grounds for an abuse of discretion. However, that discretion is a narrow one, as it relates to circumstances that provide good cause for delay of the trial.

*State v. Campbell*, 714 N.W.2d 622, 627 (Iowa 2006) (citations omitted).

In our view, the district court here considered and properly weighed relevant factors in finding good cause for delaying the presentation of proof until July 7. It acted within its discretion.

First, the State demonstrated that the problem was expert witness unavailability due to circumstances beyond the State's control. The State explained that it needed to call three of its listed medical experts relating to the serious injury. Two of the experts, a neurosurgeon and a radiologist, were unavailable the week of June 23 because of work commitments.

Most importantly, as emphasized by the district court, the third expert—Dr. Seluk—was out of the country and would not be returning until after the speedy trial deadline. Although the State made a number of expert witness designations in June, Dr. Seluk was *not* a last-minute designation; rather, she had been designated on March 30 when the trial information was filed. And even though Dr. Treves, the neurosurgeon, could have been named earlier, all expert witness designations complied with the rule. *See* Iowa R. Crim. P. 2.19(2) ("Additional witnesses . . . may be presented by the prosecuting attorney if the prosecuting attorney has given the defendant's attorney of record . . . a minute of such witness's evidence . . . at least ten days before the commencement of the trial.").

The State also demonstrated that some delay in its trial preparation was understandable because it had believed the case would be resolved on a guilty plea. It took everyone by surprise, including defense counsel, when the defendant declined the State's plea offer on June 9. As expected, that offer turned out to be significantly more favorable to the defendant than the trial outcome.

We have addressed expert witness unavailability before as a justification for extending the speedy trial deadline. In *Petersen*, we held that good cause existed to postpone trial fourteen days past the speedy trial deadline because one of the State's expert witnesses was on vacation during a rescheduled trial date. 288 N.W.2d at 334–35. Trial in *Petersen* had been initially scheduled for May 24, well before the June 28 speedy trial deadline. *Id.* at 334. However, after defense counsel realized he had several other trials scheduled for May 24, he informally "requested the prosecutor's consent to a continuance." *Id.* Unbeknownst to the prosecutor, defense counsel rescheduled his other cases, never asked the court for a continuance, and appeared for trial on May 24. *Id.* The prosecutor believed the case had been continued due to the earlier conversation and was not ready to try the case. *Id.* Trial was therefore continued to June 14. *Id.* Six days before that date, the State moved for another continuance "because a material expert witness was on vacation out of state" at the time of the rescheduled trial. *Id.* Trial was continued again to July 12. *Id.*

On appeal, the defendant claimed that the fourteen-day delay violated his constitutional and statutory rights to speedy trial. *Id.* We rejected both claims and concluded there was good cause for the delay, reasoning,

> The first trial date was passed on the basis of an honest misunderstanding of counsel. The prosecutor reasonably believed that the defendant's attorney wanted the case continued and was to file a motion for continuance. The second trial date was not fulfilled because of the absence of a witness.

*Id.* at 335.

This case bears several important similarities to *Petersen.* In both cases, the State was not blameless and its diligence could have been criticized in hindsight. Yet the bottom line was that in both cases, the rescheduled trial date conflicted with the schedule of at least one material expert witness, a fact which the State brought to the court's attention before trial. That was enough to justify a brief extension past the speedy trial deadline.

It should be noted that the defendant did not demand a speedy trial in *Petersen. Id.* But we explained that this was just one piece of the puzzle—it was only one of three factors why a "less serious reason" would justify the delay. *Id.* The other two factors, "a relatively short" delay and a lack of significant prejudice to the defendant, were present both in *Petersen* and here. *Id.*

Although McNeal opposed the adjustment in the trial schedule and asserted his speedy trial rights, it is noteworthy that he did not contest the reasons offered by the State for the unavailability of the medical witnesses or the State's reasons for why their testimony was needed. This is significant because when a trial court exercises discretion, it often takes its cue from the give-and-take of the parties' arguments. Had defense counsel questioned the prosecutor's representations regarding the unavailability of the three medical witnesses and the need for their testimony, the district court might have insisted on something more than

the prosecutor's rather brief professional statements in these subject areas.

Given what later transpired at trial, the grounds for adjusting the trial schedule appear less strong today than they undoubtedly appeared to the district court on June 16. The State decided not to call Dr. Seluk, even though her absence from the country had been the primary reason for granting the State's motion. But this does not mean the district court abused its discretion in finding good cause on June 16.

Even with hindsight, the State's concern about missing medical proof was legitimate. At trial, the defendant ultimately disputed three important points: (1) whether the victim, Browning, could recall correctly any of the events of February 22 given the blow he received; (2) whether Browning had been hit in his head by a sledgehammer or suffered his injury in some other way (say, accidentally); and (3) whether Browning's injury was serious. Medical testimony was needed in all three areas.

As things turned out, this medical testimony came entirely from one witness—Dr. Treves. However, this does not gainsay the potential importance of Dr. Seluk, an ear, nose, and throat specialist. Dr. Treves could not opine on Browning's hearing loss. In his testimony, Dr. Treves admitted that Dr. Seluk was evaluating and following the hearing issue. If Dr. Seluk had appeared at trial, she presumably would have testified regarding Browning's permanent hearing loss in his left ear. Later in the trial, *Browning* was allowed to testify without a defense objection that he was suffering "from [an] inner neuro hearing loss of 90 percent in [his] left ear." Still, to confirm the limits of the medical proof that had been presented, defense counsel forced Browning to admit on cross examination that "*Dr. Treves* didn't do any hearing tests on [him]." (Emphasis added.)

In closing argument, the prosecutor repeatedly emphasized to the jury that the ninety percent hearing loss amounted to a serious injury. If defense counsel had successfully objected to Browning's lay testimony about his permanent hearing loss, possibly Dr. Seluk would have been called to testify after all.

The district court likely would have acted within its discretion if it had done what McNeal asked for on June 16—namely, ordered the entire trial to begin on June 23, including the presentation of proof. Furthermore, if the district court had been aware of the fact that Dr. Seluk ultimately would not testify at trial, we think the court *probably would have done* what the defendant asked for on June 16. In that event, we presume the State would have found a way to present its case.

Regardless, we should not be evaluating the June 16 good-cause determination based on subsequent events.[2] Given the record and the parties' arguments at the time, the district court took a reasonable course of action. When the prosecutor's professional statements were not disputed by defense counsel, the court accepted them. Although defense counsel clearly stood on his client's speedy trial rights, he also

---

[2]In reviewing a district court ruling for abuse of discretion, it makes sense to consider the facts and circumstances as they existed when the district court ruled. We have said so expressly in other contexts. *See Whitley v. C.R. Pharmacy Serv., Inc.*, 816 N.W.2d 378, 389–90 (Iowa 2012) (holding that the district court's sanction in a discovery dispute was appropriate "[b]ased on the circumstances existing at the time the decision was made"); *State v. Clark*, 464 N.W.2d 861, 864 (Iowa 1991) (upholding the district court's ruling on a motion to sever based on the "complete record . . . at the time of the trial court's ruling"); *Stanford v. Iowa State Reformatory*, 279 N.W.2d 28, 35 (Iowa 1979) (finding no abuse of discretion in rejecting a motion to reopen testimony even though "at this time, with the benefit of hindsight and the offer of proof . . . it would appear that much could have been made of [the evidence]"); *see also In re Marriage of O'Brien*, 491 N.W.2d 202, 204 (Iowa Ct. App. 1992) ("We look only to the reasons advanced when the motion for continuance was made in our review of this issue.").

seemed focused on trying to use the situation to obtain a more favorable plea offer from the State. At the close of the hearing, the court allowed the presentation of evidence to be delayed until July 7, but no further.

In addition to *Petersen*, we also take guidance from a case in which we found plea negotiations to constitute good cause for a trial delay past the speedy trial deadline. *See State v. LaMar*, 224 N.W.2d 252, 254 (Iowa 1974). In *LaMar*, the parties engaged in plea bargaining for several weeks around the scheduled time of trial. *Id.* at 253. The prosecutor later testified that he had three or four conversations with defense counsel, and in each one defense counsel had indicated there would likely be a guilty plea. *Id.* at 254. After the speedy trial deadline passed and plea negotiations fell through, the prosecutor had the case assigned for the next available trial date. *Id.* Considering the circumstances of that case, we affirmed the district court's finding of good cause, although one could certainly fault the State for not starting and concluding the plea negotiations more diligently. *Id.* There, as here, the plea negotiations began shortly before the scheduled trial date, but unlike in the present case, the plea negotiations even continued after the speedy trial deadline without the prosecutor taking action to address that deadline. *Id.*

Additionally, in *State v. Mount*, we upheld a district court's decision to reschedule a trial to commence on September 29, six days after the speedy trial deadline would have expired. 422 N.W.2d 497, 499 (Iowa 1988), *overruled on other grounds by State v. Royer*, 436 N.W.2d 637, 639–40 (Iowa 1989). Our opinion illustrates how we considered the matter from the practical perspective of the trial judge who was on the scene and had to make the on-the-spot determination:

> [T]he court had two options: schedule two jury trials in Story County where ordinarily only one jury trial would be in session at any given time; or delay the latter case until September 28. In the trial court's judgment, neither alternative was acceptable. The first would disrupt the trial calendar in the county to which [another district court judge] was already assigned on September 23. The second would unfairly burden the State by requiring it to reissue subpoenas and redo travel arrangements for numerous out-of-state witnesses.

*Id.* Likewise, putting ourselves in the shoes of the district judge who had to rule in this case on June 16, 2015, we find no abuse of discretion.[3]

### IV. Remaining Issues.

We now turn to McNeal's remaining arguments on appeal.

First, McNeal challenges the sufficiency of the evidence supporting his convictions. However, Browning's testimony established that he and McNeal were the only people in the shop and that McNeal had refused Browning's request to leave. When Browning came to after blacking out, McNeal was actually departing, Browning had suffered a severe blow to

---

[3]The court of appeals cited *Taylor*, 881 N.W.2d at 77, in its decision. We think that case is distinguishable. In *Taylor*, the State took no action with respect to the speedy trial deadline until the defendant moved to dismiss the charges, approximately six weeks after the deadline had already passed. *Id.* at 74. The State then claimed it had not even been aware of Taylor's whereabouts until two days after the expiration of the speedy trial deadline. *Id.* at 78. Taylor, however, referred to a letter at the hearing showing that the local county sheriff had been informed of her incarceration in another county jail one month before the expiration of the deadline. *Id.* at 75. We concluded that "the State did not meet its burden of showing good cause for the delay." *Id.* at 78. We explained,

> The State did not present any evidence to show due diligence in attempting to locate Taylor and it could not deny that Polk County contacted the Story County sheriff upon Taylor's arrest in Polk County in light of the outstanding Story County warrant. The State simply claims a generalized and even implausible communication problem.

*Id.* at 78–79.

This case presents a different scenario—not an after-the-fact effort to justify a missed deadline with a generalized and implausible communication problem, but a timely motion to avoid the effects of the deadline based on uncontested professional statements about expert witness unavailability and the need for those experts.

the side of his head, and a sledgehammer was missing. As a result of the blow, Browning suffered a skull fracture and permanent injuries. McNeal later claimed, vaguely and unpersuasively, that he had not been in the shop that day because he "get[s] around" and was "at the other end of town." The evidence of guilt was sufficient.

McNeal next claims that counsel should have objected to evidence of McNeal's drug use as impermissible propensity evidence under Iowa Rule of Evidence 5.404(*b*). However, the record indicates that the evidence was used to prove motive—specifically, that McNeal had shared drugs with Browning "two to three days before" and McNeal was demanding drugs from Browning on February 22 before he allegedly struck him. There was clear proof that *both* McNeal *and* Browning used drugs, thereby diminishing the potential prejudice in a case where McNeal was charged with assaulting Browning. In any event, the drug use helped provide an explanation for the assault. Counsel was not ineffective in failing to object to this evidence. *See State v. Nelson*, 791 N.W.2d 414, 425–26 (Iowa 2010) (finding evidence of drug dealing that was relevant to motive in a murder case was not excludable under rule 5.404(*b*)); *State v. Crawley*, 633 N.W.2d 802, 808 (Iowa 2001) (finding evidence of drug use admissible to prove motive for committing a forgery).

McNeal also claims his attorney was ineffective for failing to object to hearsay testimony of Paul Aleksiak, the shop owner. Aleksiak testified that Browning had told him, "Oh God. [McNeal] hit me in the head with a hammer." Without deciding whether such a statement would qualify for a hearsay exception, we conclude that counsel was not ineffective because this testimony was cumulative. *See State v. Schaer*, 757 N.W.2d 630, 638 (Iowa 2008) (finding no prejudice from hearsay when it was

cumulative of other properly admitted testimony). Browning testified that while his initial memory of the assault was hazy, he later recalled that McNeal must have hit him with a sledgehammer. This is also consistent with testimony from a detective, who testified that Browning's memory had improved in the days after the assault and Browning had identified McNeal as the assailant.

Finally, McNeal claims the district court erred when it allowed the State to display a replica of the missing sledgehammer at trial over his objection. Browning testified that the replica looked "[v]ery similar" to the sledgehammer that went missing the night of the assault. It was made clear to the jury that the replica was not the original. The replica was not admitted into evidence. Under these circumstances, the district court did not abuse its discretion when it allowed the replica sledgehammer to be used as demonstrative evidence. *See Henderson*, 268 N.W.2d at 178–79 (finding no reversible error in the admission into evidence of an experiment gun that was not the actual gun).

**V. Conclusion.**

For the foregoing reasons, we vacate the decision of the court of appeals and affirm McNeal's convictions and sentence.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Cady, C.J., and Waterman and Zager, JJ., join this opinion. Cady, C.J., files a concurring opinion in which Waterman, J., joins. Zager, J., files a separate concurring opinion in which Waterman, J., joins. Appel, J., files a dissenting opinion in which Wiggins and Hecht, JJ., join.

**CADY, Chief Justice (concurring specially).**

I concur in the opinion of the majority. I write separately to emphasize its most important point.

This case is resolved by the answer to the question of whether good cause existed to start and stop the trial. The good cause necessary to support this action would be the same good cause to support extending the commencement of a trial beyond the speedy-trial deadline. *See* Iowa R. Crim. P. 2.33(2)(*b*); *see also United States v. Brown*, 819 F.3d 800, 815 (6th Cir. 2016) (concluding, under the Federal Speedy Trial Act, a "start-and-stop plan" must be examined for compliance with the Act).

The district court decided good cause existed. Our review of that decision is for an abuse of discretion. *See State v. Miller*, 637 N.W.2d 201, 204 (Iowa 2001); *State v. Bond*, 340 N.W.2d 276, 279 (Iowa 1983).

Generally, the unavailability of witnesses can support good cause. *See, e.g., State v. Todd*, 468 N.W.2d 462, 470 (Iowa 1991); *State v. Petersen*, 288 N.W.2d 332, 335 (Iowa 1980). The dispute in this case is whether the district court was presented with enough evidence to support this finding.

While I would likely have required more evidence if I had been the trial judge in this case, enough evidence was presented to reasonably support a finding of good cause. There was evidence the defendant backed out of a plea deal at the eleventh hour, which left the prosecutor scrambling to coordinate witnesses for trial. An element of the crime charged, willful injury causing serious injury, *see* Iowa Code § 708.4(1) (2015), required medical testimony, *see id.* § 702.18(1)–(2) (defining "serious injury"); *State v. Carter*, 602 N.W.2d 818, 821 (Iowa 1999) (describing the use of medical testimony to establish serious injury).

There was evidence the prosecutor had been working hard to schedule the needed medical personnel to testify at trial but had learned three medical doctors were unavailable. The evidence also explained the reasons for their unavailability.

Discretion expresses the notion of latitude. The district court decision was not out-of-bounds, but expressed the notion that the short delay was justified under the circumstances. The decision was supported by enough evidence and fell within the district court's discretion.

Waterman, J., joins this special concurrence.

**ZAGER, Justice (concurring specially).**

I concur in the well-reasoned majority opinion. I also find that there was no abuse of discretion by the district court in its decision to bifurcate the trial in this matter. I agree with the district court that under all of the facts and circumstances of this case, there was good cause to adjust the scheduling of the trial. Likewise, the good cause enunciated by the prosecutor was not a ruse or merely a pretext to avoid McNeal's speedy trial rights. However, I find it necessary to write on the more basic issue of whether there was a violation of McNeal's speedy trial rights at the outset when McNeal was brought to trial within ninety days as required by our rules. Finding McNeal was brought to trial within ninety days, I would vacate the decision of the court of appeals and affirm the district court.

Iowa Rule of Criminal Procedure 2.33(2) generally declares it is the public policy of Iowa that "criminal prosecutions be concluded at the earliest possible time consistent with a *fair trial to both parties*." Iowa R. Crim. P. 2.33(2) (emphasis added). The specific rule incorporating speedy trial rights is contained in Iowa Rule of Criminal Procedure 2.33(2)(*b*), and provides,

> If a defendant indicted for a public offense has not waived the defendant's right to a speedy trial the defendant must be *brought to trial* within 90 days after the indictment is found or the court must order the indictment to be dismissed unless good cause to the contrary be shown.

*Id.* r. 2.33(2)(*b*) (emphasis added).

The settled law established by this court over thirty-five years ago was that a defendant is "brought to trial" for purposes of satisfying speedy trial requirements "when the jury is impaneled and sworn." *State v. Jones,* 281 N.W.2d 13, 17 (Iowa 1979). I believe the district court

correctly applied this settled law and scrupulously protected the spirit and intent of McNeal's speedy trial rights.

Under rule 2.33(2)(*b*), a criminal charge cannot go forward "if trial does not commence" within ninety days of the State filing the charging instrument. *State v. Taylor,* 881 N.W.2d 72, 76 (Iowa 2016). In *Taylor,* the case had been set for trial well after the expiration of the ninety day requirement. *Id.* at 74. Counsel for the defendant filed a motion to dismiss citing a violation of the speedy trial rule. *Id.* That case was decided solely on whether there had been an implied waiver of Taylor's right to a speedy trial or whether there was good cause for any delay in the commencement of trial. In my opinion, that is not the issue here. Rather, there is no question that the trial commenced within the ninety day speedy trial rule.

I recognize that the speedy trial rule serves several purposes.

> The purpose of both the criminal procedural rules and the constitutional provisions is to "relieve an accused of the anxiety associated with a suspended prosecution and provide reasonably prompt administration of justice." The speedy indictment and speedy trial rules also aim to prevent the harm that arises from the "possible impairment of the accused's defense due to diminished memories and loss of exculpatory evidence." This type of harm is the "most serious," because "the inability of a defendant adequately to prepare his case skews the fairness of the entire system."

*Ennenga v. State,* 812 N.W.2d 696, 703 (Iowa 2012) (quoting *State v. Wing,* 791 N.W.2d 243, 246–47 (Iowa 2010), *overruled on other grounds by State v. Williams,* ___ N.W.2d ___, ___ (Iowa 2017)). I fail to see how a delay of eight days between the empaneling of the jury and the presentment of evidence in this matter was contrary to any of the expressed purposes of the speedy trial rule, other than the brief extension of anxiety to the defendant that is associated with any criminal prosecution. Counsel for the defendant did not argue, and I believe

could not reasonably argue, any potential harm or impairment to the defense to adequately prepare for trial. The district court adjusted the trial schedule here in order to preserve a fair trial to both parties, consistent with Iowa Rule of Criminal Procedure 2.33(2).

I agree with the general proposition that the speedy trial requirements may not be avoided by simply empaneling a jury and then delaying the receipt of evidence. However, as here, there may be occasions when a brief delay after the jury is sworn does not raise any speedy trial implications. McNeal's argument on appeal was that the trial was recessed for "an unusually long period of time, with the specific intent of avoiding dismissal." I do not agree that either of these arguments is applicable here.

As would be expected, there is no federal or state consensus on when a trial "commences" for speedy trial purposes. But what all the cases appear to focus on is the length of the recess and the perceived intent to violate the spirit of the rule. The pivotal federal case on bifurcation is *United States v. Gonzales,* 671 F.2d 441 (11th Cir. 1982). In *Gonzales,* the United States Court of Appeals for the Eleventh Circuit determined that trial "commences" under the Speedy Trial Act when voir dire begins. *Id.* at 443. However, it cautioned that its holding was not to be abused:

> We caution that our decision not be viewed as a license to evade the Act's spirit by commencing voir dire within the prescribed time limits and then taking a prolonged recess before the jury is sworn and testimony is begun. The district courts must adhere to both the letter and the spirit of the Act, and we will not hesitate to find that a trial has not actually "commenced" within the requisite time if we perceive an intent to merely pay the Act lip service.

*Id.* at 444. Subsequent federal cases have reached opposite conclusions based on the unique facts of each case.

In *Rhinehart v. Municipal Court,* the Supreme Court of California heard a case where a jury was empaneled on the final day of the speedy trial period, and the district court announced a delay of five or six days before evidence would be presented. 677 P.2d 1206, 1208 (Cal. 1984). The district court announced the reason for the delay was court congestion, and the only reason for jury selection and then the delay was to avoid a speedy trial dismissal. *Id.* The court ultimately determined "brought to trial" does not mean when a jury is empaneled. *Id.* at 1211. Rather, the court concluded an accused is "brought to trial" when the case

> has been called for trial by a judge who is normally available and ready to try the case to conclusion. The court must have committed its resources to the trial, and the parties must be ready to proceed and a panel of prospective jurors must be summoned and sworn.

*Id.* at 1211–12 (footnote omitted). Under these principles, court congestion was not deemed a valid reason to bifurcate the trial. *Id.* at 1212.

The Washington appellate court also adopted the Eleventh Circuit *Gonzales* test for when a defendant is brought to trial. *See State v. Becerra,* 831 P.2d 781, 783 (Wash. Ct. App. 1992). In *Becerra*, the court concluded the defendant was brought to trial on the 59th day after arraignment when the case was called for trial and the jury was chosen. *Id.* Likewise, the New Mexico Court of Appeals held a delay of eighteen days between jury selection and the presentation of evidence did not violate New Mexico's six month speedy trial rule. *State v. Rackley*, 998 P.2d 1212, 1214 (N.M. Ct. App. 2000). The *Rackley* court noted, however, that its holding was limited to the facts before it in that case. *Id.* at 1215.

So let's look at the facts in this case. The trial information was filed on March 30, 2015. Trial was originally scheduled for June 9. Prior to June 9, a plea offer was made to McNeal. Everything indicated that a plea would be taken that day. After further negotiations, and contrary to the understanding of the parties, McNeal rejected the final plea offer. The parties were now at seventy one days into the ninety day speedy trial period. Trial was reset for June 23, with a final pretrial conference scheduled for June 16. Between June 9 and June 16, the State made contact with its medical witnesses and determined that some of its key expert witnesses would not be available to testify at the time of trial.

In any busy urban county, there are literally dozens of felony cases working their way through the system. When a case is set for a plea proceeding, preparation for trial and contact with witnesses is realistically not going to take place. In this case, as soon as the State was aware that the case would proceed to trial, it took steps to contact its medical experts for trial scheduling. Not surprisingly, scheduling conflicts arose with less than fourteen-days prior notice of the date of trial. As we would also expect, the State at the final pretrial conference on June 16 immediately advised the district court and defense counsel of the problem scheduling its experts. I find no fault with the State's preparation for trial, and certainly do not find it should be punished for how it handled the scheduling of its experts. The way the State handled its case is the reality of scheduling conflicts in a busy county, particularly after a late, failed plea proceeding.

What I believe the record reflects is that at the pretrial conference, the State advised the parties that a recess in the presentation of evidence may be necessary to accommodate the schedules of its expert witnesses. The State was ready to proceed to trial and the presentment of testimony

of all of its lay witnesses, just not its medical experts. The State did offer that, if the district court would entertain a bifurcation of the trial, it might solve the scheduling problem as well. The district court, after a full discussion with counsel, and consistent with the settled law contained in *Jones*, decided that it would be best to present all of the evidence at one time rather than piecemeal, and bifurcated the trial. The district court also stated that it did not think the State's request for a bifurcation was "a ruse or merely a pretext to void Mr. McNeal's speedy trial rights." I agree.

On June 26, the district court judge was available and ready to try the case to conclusion. The jury was summoned, empaneled and sworn on June 26. Except for the medical experts, the State and McNeal were ready to proceed to trial. McNeal was brought to trial in compliance with our rule regarding speedy trial. McNeal was also brought to trial consistent with our long-standing precedent, with established federal caselaw, and with established caselaw from other jurisdictions. There was no violation of McNeal's speedy trial rights here as he was brought to trial within ninety days of the indictment.

Waterman, J., joins this special concurrence.

**APPEL, Justice (dissenting).**

I respectfully dissent. The State's case for a continuance made at the June 16, 2015 hearing was a nothingburger. The panel of the court of appeals clearly saw through the arguments and faithfully applied our caselaw when it unanimously found that the State failed to offer facts to support a continuance of trial for good cause "shown" under Iowa Rule of Criminal Procedure 2.33(2)(*b*). We should do the same.

The only purpose of this bifurcated trial was an attempt to avoid the speedy trial deadline of rule 2.33(2)(*b*). Such a start-and-stop strategy cannot be employed to avoid otherwise applicable speedy trial deadlines. *See United States v. Stayton*, 791 F.2d 17, 20 (2d Cir. 1986) (holding prosecution must show justification for delay between impaneling of jury and receipt of evidence).

In order to avoid dismissal under Iowa Rule of Criminal Procedure 2.33(2)(*b*) based on unavailability of witnesses, the State must *show* the necessity of the witnesses, that it exercised due diligence in attempting to secure the presence of witnesses needed for trial, and that, notwithstanding its diligent efforts, the witnesses needed for trial are unavailable. Note that the State must show, and not simply proclaim, good cause. The State bears the burden of showing such good cause. *State v. Olson*, 528 N.W.2d 651, 653 (Iowa 1995).

In determining whether the prosecution has offered factual support or shown good cause for a continuance, we have emphasized "the bare assertion" by a prosecutor that speedy trial deadlines could not be met is insufficient. *State v. Winters*, 690 N.W.2d 903, 909 (Iowa 2005). And, we have stated "[o]ur precedents . . . disfavor using generalities in establishing good cause" and "good cause to avoid speedy trial must be

rooted in facts, not conclusions." *State v. Taylor*, 881 N.W.2d 72, 77 (Iowa 2016). These cases simply reinforce the plain text of the rule— "good cause" must be shown by facts in the record and not simply declared by the party seeking to avoid mandatory dismissal under rule 2.33(2)(*b*). *See Sweet v. Myers*, 612 P.2d 75, 77 (Colo. 1978) (en banc) (finding unsupported allegation that a material witness was unavailable insufficient to support continuance because "[t]here must be support for the findings in the record before the court").

At the hearing on the motion to continue on June 16, the prosecution offered only conclusions on the question of necessity of the witnesses claimed to be unavailable. Specifically, the prosecution offered the conclusory declaration that three of its eight designated medical witnesses who were needed "to prove the elements in this case of the serious injury [were] unavailable." That, literally, was the sum and substance of the State's presentation on the necessity of the witnesses. They were necessary witnesses, according to the State, because we say so. While the necessity of three of the eight designated medical witnesses was certainly declared by the State, the factual basis for the necessity of the witnesses was not "shown" as required by the rule at the June 16 hearing.

The prosecution's factual showing of necessity at the June 16 hearing was thus a nothingburger. And yet there is more. At the time of the June 16 hearing, the prosecution, remarkably, had listed eight medical providers as witnesses. The minutes of testimony show substantial redundancy regarding their expected testimony.[4] No one

---

[4]At the June 16 hearing, the prosecution did not assert that Dr. Crystal Seluk, for instance, was a required witness on the question of damage to Matthew Browning's hearing or ear. In the minutes of testimony that were part of the record on June 16,

examining the minutes of testimony would identify three witnesses as essential to the State's case, and, indeed, the description of testimony of the medical witnesses was largely redundant and based on the same set of medical records.

This nothingburger record simply does not cut it under the rule and our caselaw. Mere conclusions by the prosecution do not entitle it to avoid dismissal for good cause shown. Good cause shown must be based on facts, not conclusory declarations of the prosecution. *Taylor*, 881 N.W.2d at 77; *Winters*, 690 N.W.2d at 909.

As a result of these well-established principles, mere incantation of the phrase "trial court discretion" is not an abracadabra that frees the prosecution from the mandatory provisions of rule 2.33(2)(*b*). We have emphasized the double-barreled mandatory command under our rule, which states "a defendant '*must* be brought to trial within ninety days . . . or the court *must* order the indictment to be dismissed unless good cause to the contrary be shown.' " *State v. Miller*, 637 N.W.2d 201, 204 (Iowa 2001) (emphasis in original) (quoting Iowa R. Crim. P. 27(2)(*b*), now rule 2.33(2)(*b*)). The rule simply does not vest wide-open discretion with the trial court, end of story, next case. We have long held that the trial court's discretion is "circumscribed by the *limited exceptions* to the rule's

---

Dr. Seluk's described testimony was nearly identical to that of two other designated experts, Dr. Evelyn Reher and nurse Tracie Kerns. According to the minutes, Dr. Reher and Kerns would testify, among other things, about "hemotympanum [blood in the middle ear]." Dr. Seluk was described as offering testimony that Browning "had evidence of obvious hemotympanum with an intact tympanic membrane." Any post-hoc claim that Dr. Seluk was a necessary witness related to hearing loss was not raised at the June 16 hearing. Moreover, such a claim is belied by the record that was available on June 16 and is further weakened by the fact that Dr. Seluk was not called to testify at trial by the prosecution. There is also nothing in the minutes to suggest that of the eight medical professionals listed, a specific neurologist or radiologist had testimony different from other designated witnesses. Nearly all the medical witnesses were listed as testifying about subdural hematoma as a result of the blow to Browning's head.

mandate." *Id.* (emphasis added); *accord State v. Bond*, 340 N.W.2d 276, 279 (Iowa 1993). The rule's mandate requires that good cause be shown in the record by supported facts, not by conclusions.

There is some suggestion wafting through the majority opinion that *defense counsel* did not make an adequate record at the June 16 hearing. The district court seemingly interpreted the failure of defense counsel to challenge the assertions of the prosecution in a fashion as advocated by the majority. But where there are no facts offered to support the necessity of specific witnesses who are claimed to be unavailable, the court has no discretion but to dismiss the action because good cause has not been shown under the rule. *See* Iowa R. Crim. P. 2.33(2)(*b*). The defendant has no burden on the good-cause-shown issue. *Olson*, 528 N.W.2d at 653.

In essence, what the majority has done is apply a *Batson*-type burden-shifting arrangement. *See Batson v. Kentucky*, 476 U.S. 79, 97, 106 S. Ct. 1712, 1723 (1986). Under the majority opinion in this case, when the prosecution articulates a reason for a continuance, the burden shifts to the defendant to show that the articulated reasons are invalid. *See id.* But under rule 2.33(2)(*b*), there is no *Batson*-type shifting of the burden to the defense based on the opposing party's mere articulation of a reason purportedly justifying a continuance.

The failure of the prosecution to offer any factual support for the need for the witnesses at the June 16 hearing is telling. We will never know what kind of factual record the prosecution might have developed at the June 16 hearing, but we do know, in fact, that at trial only one of the three witnesses said to be needed were called to testify. Dr. Crystal Seluk did not appear. Apparently, two of the witnesses were "necessary" for purposes of avoiding dismissal under rule 2.33(2)(*b*) on June 16, but

were not in fact necessary when the matter came to trial three weeks later on July 7. The majority opinion freelances about hypothetical reasons why this might have occurred, but I prefer to stick to facts in the record, rather than engage in an exercise of legal imagination. Further, the practice of declaring three witnesses necessary for trial, and only calling one of them after trial has been rescheduled, brings to mind the admonition of Justice Stevens that care should be taken to avoid converting speedy-trial considerations into "nothing more than managerial considerations for the prosecutor to manipulate." *United States v. Lovasco,* 431 U.S. 783, 800, 97 S. Ct. 2044, 2054 (1977) (Stevens, J., dissenting).

Under our cases, "if the reason for the delay is insufficient, other factors will not avoid dismissal." *Ennenga v. State,* 812 N.W.2d 696, 706 (Iowa 2012); *accord Taylor,* 881 N.W.2d at 77. Thus, there is no requirement that the defense show prejudice resulting from the delay. *Taylor,* 881 N.W.2d at 76; *Ennenga,* 812 N.W.2d at 705, *State v. Sassman,* 226 N.W.2d 808, 809 (Iowa 1975). And, the length of the delay does not relieve the State of its burden to show good cause to avoid dismissal. We have declared that the procedural deadline cannot be avoided by showing it had been violated "only a little bit." *Miller,* 637 N.W.2d at 205 (quoting *State v. Goff,* 244 N.W.2d 579, 582 (Iowa 1976)). We engage in a more strict speedy trial analysis where the defendant, as here, has consistently asserted his speedy trial rights. *State v. Petersen,* 288 N.W.2d 332, 335 (Iowa 1980).

In short, we have repeatedly and significantly departed from the multifactored balancing test of *Barker v. Wingo,* 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972) (balancing length of delay, reason for delay, whether the right to speedy trial was demanded, and prejudice in speedy

trial context). *See Miller*, 637 N.W.2d at 204 (citing cases departing from *Barker*'s balancing test). Reading the majority opinion, with its emphasis on prejudice and the length of the delay, you would never know that the *Barker* balancing test was abandoned decades ago in Iowa in favor of a more stringent application of speedy trial requirements.

The fact that there was some prior plea bargaining in this case is a red herring for a number of reasons. The district court wisely did not rest its decision on prior plea bargaining. The defendant had consistently insisted on his speedy trial rights throughout the proceeding. Apparently, the majority does not believe on the record that the defendant may simultaneously pursue plea bargaining while insisting on speedy trial rights. But the prosecution had two weeks after the collapse of plea discussions to line up its medical witnesses for trial. In any event, the fact that plea discussions did take place over a short period of time has nothing whatsoever to do with the question of whether three of the eight designated medical witnesses were necessary to prove the prosecution's case.

The lack of showing of necessity of the three witnesses is dispositive here, but there is more. The prosecution did only marginally better on the issue of due diligence in scheduling. At the hearing, the prosecution declared that it had been working "since [June 9, when the trial was rescheduled for June 23,] to schedule the expert witnesses in this case that we have." But no factual indication was provided as to what those efforts were. The prosecution, without any factual showing, is claiming it exercised due diligence in scheduling the witnesses. But what, in fact, did the prosecution do?

One cannot glean that from the conclusory presentation at the June 16 hearing, but in a posttrial hearing, the details of the

prosecution's due diligence emerged. At the posttrial hearing, the prosecutor admitted that she was out of the office on June 9 when the trial date was continued and "[i]t was only upon my returning to the office on June 15th that I started working diligently to get these witnesses here." So during the period between June 9, when the trial date was moved to June 23, and the June 16 hearing, the prosecution moved diligently to add new witnesses to the minutes of testimony but did not begin attempting to determine their availability for trial until the day before the June 16 hearing.

There was thus no evidence at all that the prosecution was "working hard" to schedule its witnesses. Behind the prosecution's bare assertions, the prosecution presented no evidence *at all* of its efforts at the June 16 hearing. Only in the posttrial hearing was actual evidence of its effort presented, namely, that the prosecutor began her efforts to schedule the witnesses *one day* before the June 16 hearing.

On the question of due diligence, the case is similar to *United States v. Brown*, 819 F.3d 800 (6th Cir. 2016). In *Brown*, the United States Court of Appeals for the Sixth Circuit noted that the prosecutor had "missed a week of prep" and was "late getting ahold of" the witness. *Id.* at 819. Here, the prosecutor was out of the office the week prior to the June 16 hearing and began trying to schedule witnesses the day before the hearing. In *Brown*, as here, there was no indication that the witness could not have been subpoenaed to appear at trial. *Id.* Further, there was no indication that the witness would not be available at some time during a timely period thereafter. *Id.*; *see also Meine v. State*, 827 S.W.2d 151, 154 (Ark. 1992) (stating prosecution had not met its burden for continuance, in part, where it failed to subpoena doctor or inquire into the doctor's schedule to find a time for testimony to take place).

Additionally, the State's assertions of unavailability were insufficient. The State suggested that a radiologist was unavailable because of "work commitments." But in *State v. Clark*, the Supreme Court of Idaho, citing—ironically now—the Iowa case of *State v. Nelson*, 600 N.W.2d 598, 601 (Iowa 1999), declared that "a thorough analysis of the reasons for the delay represents the soundest method for determining what constitutes good cause." 16 P.3d 931, 936 (Idaho 2000). The Idaho court further stated "the desire to accommodate [a witness's] schedule cannot be said to comprise a reason that rises to the level of a legal excuse for the delay." *Id.* at 937. An Idaho court followed our precedent. The majority today does not.

The State declared one witness, a neurosurgeon, was in surgery. It may be conceded that surgeons are often in surgery. But the question is whether the neurosurgeon could have been available at some time during a multiday trial for testimony. *See United States v. Burrell*, 634 F.3d 284, 292 (5th Cir. 2011) (finding no good cause when government repeatedly failed to present evidence regarding whether witness in a training program could be scheduled without interfering with program); *Meine*, 827 S.W.2d at 154 (holding prosecution failed to meet its speedy trial burden when it failed to subpoena doctor or inquire into doctor's schedule to find when he might be available).

Finally, the prosecution asserted that Dr. Seluk was in Europe until June 30. Trial could have timely commenced on Friday, June 26 with jury selection. The trial could then have resumed on Monday, June 29 and Tuesday, June 30 with the taking of evidence. There was no showing that Dr. Seluk could not have testified on Wednesday, July 1 in this relatively simple, straightforward trial.

The majority of this court today has declined in this case to apply Iowa Rule of Criminal Procedure 2.33(2)(*b*) and applicable caselaw. It announces *sub silentio* a new rule of law, namely, that a prosecutor's conclusory and unsubstantiated declarations of the need for certain witnesses, which it declares are unavailable, are sufficient to support a continuance. The majority also in effect shifts the burden to the defense to prove that the prosecution's conclusory assertions are without a basis in fact. That is a conceivable approach, perhaps, but it does not reflect the approach under rule 2.33(2)(*b*) or the existing caselaw. What really seems to be at work in this case is what Justice Douglas saw as the "hydraulic pressures" to affirm convictions at the expense of enforcing established legal rules. *Terry v. Ohio,* 392 U.S. 1, 39, 88 S. Ct. 1868, 1889 (1968) (Douglas, J., dissenting).

As a result, for the above reasons, I agree with the court of appeals decision in this case. I would reverse the district court and remand the case for dismissal.

Wiggins and Hecht, JJ., join this dissent.