In re the MARRIAGE OF Patricia O'BRIEN and Mark Thomas O'Brien.

Upon the Petition of Patricia O'Brien, Petitioner–Appellee,

And Concerning Mark Thomas O'Brien, Respondent–Appellant.

No. 91–1967.

Court of Appeals of Iowa.

Aug. 27, 1992.

Terrance G. Rutherford and Karen Mailander of Howard, Rutherford & Mailander, Atlantic, for respondent-appellant.

J.C. Salvo and Richard C. Schenck of Salvo, Deren, Schenck & Lauterbach, P.C., Harlan, for petitioner-appellee.

Considered by DONIELSON, P.J., and SACKETT and HABHAB, JJ.

SACKETT, Judge.

Respondent-appellant Mark Thomas O'Brien challenges the custody and economic provisions made by the trial court in dissolving Mark's marriage to petitioner-appellee Patricia O'Brien. Mark also contends the trial court abused its discretion in failing to grant him a continuance. We affirm as modified.

Mark and Patricia were married in 1974. Neither party brought assets of any significance into the marriage. They have three boys born in 1974, 1977, and 1981.

Mark is working in the area of construction, and since 1980 has been the owner of a business that sells and erects metal buildings. Patricia has been employed outside the home at a number of jobs, and has a current L.P.N. certification. At the time of trial, Patricia held a full-time job with a feed company and a part-time job as a cashier.

Patricia filed for the dissolution. On the day of trial, Mark requested a continuance of the case. Mark contended he had just secured an attorney and did not have sufficient time to prepare for trial. The trial court denied Mark's continuance. Mark contends, under the facts of this case, the trial court abused its discretion in denying his motion for continuance.

The dissolution petition and an application for a writ of injunction was filed by Patricia on August 31, 1989. Also on August 31, 1989, there was filed an order setting the application for hearing. There is no evidence the scheduled hearing was held. There are no further filings until August 5, 1991, when Patricia's attorney filed a trial certificate. There was a certification on the trial certificate that on August 2, 1991, the trial certificate was mailed to Mark. Then on August 5, 1991, an order, signed August 2, 1991, setting the trial for September 12, 1991, was filed, and on August 12, 1991, an order signed August 9, 1991, setting the matter for the 3rd day of September, 1991, was filed. And on August 19, 1991, an order setting a pretrial conference for September 3, 1991, was signed by the Court Administrator. On September 3, 1991, the court made a calendar entry setting the matter for hearing on September 9, 1991.

Mark did not employ an attorney to represent him until September 6, 1991. Patricia was represented by an attorney throughout the proceedings.

On September 9, 1991, Mark filed his motion for continuance reciting he had not secured an attorney until September 6, 1991, and he did not have sufficient time to prepare for trial. The motion was denied.

Mark contends the continuance should have been granted. He contends on appeal he saw no reason to hire an attorney until less than a week before the final trial date was set. Mark alleged he and Patricia were going to counseling and they continued to cohabit in the family home until the day of the final hearing, and he believed they would reconcile.

Mark was to later testify at trial about his understanding of the necessity to hire an attorney:

Q. It is my understanding that you've been living together up until today? (referring to the date of trial) A. Yes.

Q. You were together last night? A. Yes.

\* \* \* \* \* \*

A. Was my opinion that things were taken care of, smoothed over or whatever, up to go as far as on several different occasions. We went camping last week and talked about it. I thought it was— The next day a hearing. And then I thought she wasn't here. Well, it's over with.

Then only way I found out about—The way I found out I even had to be here now was that her lawyer called J and R Tax Service which does all my accounting. He called them and wanted some information on the business.

And they wouldn't give it to him without my permission. And they called me and asked me if they could do it. I told them to get it ready and then we sent it to them on Friday.

That's the only reason I knew I was going to be here today. Then we talked about it Thursday night also because I didn't want to hire a lawyer if it wasn't going to go through. And I thought it was going to be called off again.

And then it came right down to the last minute before I contacted your office to be here today.

The question is whether the trial court abused its discretion in refusing to grant Mark a continuance. *See In re Marriage of Rosalez*, 417 N.W.2d 226, 228 (Iowa App.1987). This dissolution action was not dismissed when the parties reconciled. The dissolution had basically laid dormant for two years. The parties reconciled and were living together until time of trial. However, the trial court was not given this information when the continuance was requested. This information only came out after the trial was in progress. We look only to the reasons advanced when the motion for continuance was made in our review of this issue. Additionally, Mark has not shown how he was prejudiced by the trial court's refusal to grant the requested continuance. We affirm on this issue.

Mark's second contention is that he has shown he can most effectively minister to his sons, and he should have been the parent receiving primary physical care.

Our review is de novo. Iowa R.App. P. 4. The critical issue is which parent will do the better job of raising the children. *See In re Marriage of Ullerich*, 367 N.W.2d 297, 299 (Iowa App.1985). The parent who has the ability to do the better job of raising the child or children during their minority is the parent who should be granted custody. *See In re Marriage of Vrban*, 359 N.W.2d 420, 424 (Iowa 1984).

We give weight in making these decisions to the fact-findings of the trial court, especially when considering credibility of witnesses. Iowa R.App. P. 14(f)(7). We are hindered in our review because the trial court has made no fact-finding on the issue of custody and, consequently, has given us no guidance as to the reasons Patricia was awarded primary care. We, therefore, look first to the facts advanced by the parties in support of their positions in their briefs.

Mark contends he should be the custodial parent. He points out that Patricia has low self-esteem, and she admits she has problems disciplining her sons. Mark also directs us to the evidence in the record where he receives strong support from four witnesses who testified Mark would be the superior parent.

Patricia contends Mark has been abusive to her; that the witnesses who testified for Mark were not aware of the abuse. Patricia contends these factors, together with the fact she has spent considerable time with the children, support the trial court decision making her the custodian.

The parties obviously both love their children. They both have shown an interest in the children. They both have the ability to assume custodial responsibility for the children. While they have given conflicting testimony about the alleged physical abuse, they both admit they had some extremely strong arguments in front of their children.

Patricia testified in her own behalf and had one additional witness, a counselor with Lutheran Social Services. This witness had counseled the parties jointly and Patricia separately. The counselor held a Master's degree in social work. The coun-

selor testified the nature of the counseling had been to allow Patricia to come to some kind of decision regarding what she wants in her life, her children's lives and her marriage. The counselor further testified Patricia was trying to make her marriage work and develop her self-esteem. The counselor testified Patricia has a close relationship with her children, cares for them and is a fit mother. The counselor had not seen or counseled with the children or observed Patricia's relationship with them. The counselor did not testify about Mark's capability as a parent or give an opinion as to which parent would more effectively minister to the children's care.

Testifying for Mark was a man who had known the couple and their children for ten years. He had been in the couple's home and worked with them through Little League baseball. He had coached Little League with Mark a number of years and found Mark to be patient. He said Mark interacted well with his children. He testified Patricia had an adverse effect on the children at ball games. He testified Patricia used loud and profane language to her husband and children. He was of the opinion Mark was the better parent.

A second witness had worked as a carpenter in the couple's home. He observed Mark got along with his sons well. He said Patricia got along with the children except when "they got wound up." Then he said she had no control over them. He said then Patricia hollers at the children and demands Mark make them mind. He is of the opinion Mark is the better parent because Patricia has difficulty with disciplining the children. He says the boys are active children and most of the time they ignore their mother.

Mark's third witness had known the family for over ten years. The witness had been in the couple's home and knew their children. He testified he went on vacation with the couple and their children. The witness said that he hunts and fishes with Mark, and Mark doesn't go hunting or fishing without taking a son. The witness felt Mark spent more time with the children than Patricia. The witness had never seen Mark be abusive to either Patricia or the children.

The third witness's wife also testified. She said she was frequently in the couple's home, and Mark generally had the children. She was of the opinion Mark was the better custodian. The fact that she was in the courtroom and heard Patricia's testimony about alleged abuse did not change her opinion. She has never seen any abuse toward Patricia or the children.

Mark testified he did not want the divorce. Despite the filing of the petition, little or nothing had been done toward finalizing the dissolution until about a week before the hearing. Mark attended counseling and Patricia was still attending counseling. The couple was living together until the time of the trial.

There is a conflict in the testimony of the parties on what happened when the parties had physical confrontations. Mark admitted he had hit Patricia on at least three occasions. Mark claimed on at least one occasion he hit her in retaliation for her hitting him with a light cord and injuring his eye. Patricia saw the doctor twice over the course of four years for injuries she claimed to have sustained at Mark's hand. However, her testimony was that generally his physical abuse was pushing and shoving. Patricia never sustained serious injury. There is no evidence Mark ever abused the children.

The testimony of nonparty witnesses to the superior custodian for the children is weighed very heavily in Mark's favor. The testimony clearly supports a finding Mark is the superior parent and more able to effectively discipline the three boys.

We are sensitive to issues of physical abuse. We are concerned about Mark's actions toward Patricia. Mark admitted he has acted in an inappropriate manner and has inflicted some injury. We are concerned not only by it impairing Patricia's safety, but we also are concerned that Mark is not providing a good role model for his sons, and they may grow up thinking it is alright to hit their wives or girlfriends. The question is, should this evidence tip the

scales in Patricia's favor when the balance of the evidence is strongly in Mark's favor?

The children are active young men. Patricia, by her own admission, is not assertive and has trouble controlling the children. While she contends she has trouble with discipline because Mark·does not support her, there is no guarantee she will be able to control the children if Mark is no longer living with the family.

Without the benefit of any trial court findings on our de novo review, we find the testimony clearly indicates Mark should be the custodial parent. We, therefore, modify and change physical custody to Mark.

We must next determine the extent of Patricia's child support obligation to Mark. We apply the guidelines. The Iowa Supreme Court held child support guidelines are to be strictly followed unless their application would lead to an unjust or inappropriate result. *See In re Marriage of Brown*, 487 N.W.2d 331, 333 (Iowa 1992). We modify the support award to relieve Mark of his child support obligation and order Patricia pay child support of $327.55 per month.

■ Mark has also challenged the property award. The trial court made a nearly equal division of the parties' net worth. The issue is whether it is equitable. *See In re Marriage of Griffin*, 356 N.W.2d 606, 608 (Iowa App.1984). The trial court gave Mark his business, but gave his business computer, printer and desk to Patricia. These items were used in and are a necessary part of the business. We modify the decree to award Mark the computer and printer. We also modify the decree to award the children's items to Mark, rather than to Patricia. In all other respects, we affirm the trial court.

■ The trial court ordered Mark to pay $700 toward Patricia's attorney fees. Mark contends this was not equitable. We disagree. Iowa trial courts have considerable discretion in awarding attorney fees. *See In re Marriage of Giles*, 338 N.W.2d 544, 546 (Iowa App.1983). Awards of attorney fees must be for fair and reasonable amounts and be based on the parties' re-

spective abilities to pay. *See In re Marriage of Lattig*, 318 N.W.2d 811, 817 (Iowa App.1982); *In re Marriage of Willcoxson*, 250 N.W.2d 425, 427 (Iowa 1977). An award of attorney fees rests within the court's discretion and the parties' financial positions. *See In re Marriage of Kern*, 408 N.W.2d 387, 390 (Iowa App.1987). The trial court did not abuse its discretion in awarding Patricia attorney fees. We affirm on this issue.

■ The trial court ordered Mark to pay Patricia alimony of $250 per month for thirty months. Mark contends an alimony award is not justified under this record. When determining the appropriateness of alimony, we consider (1) the earning capacity of each party, and (2) their present standards of living and ability to pay balanced against their relative needs. *See In re Marriage of Estlund*, 344 N.W.2d 276, 281 (Iowa App.1983). Alimony is an allowance to a former spouse in lieu of a legal obligation to support the former spouse. *See In re Marriage of Hitchcock*, 309 N.W.2d 432, 437 (Iowa 1981). Alimony is not an absolute right but depends upon the circumstances of the case. *See In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976). In awarding alimony, we are guided by the statutory factor listed in Iowa Code section 598.21(3). *See In re Marriage of Will*, 489 N.W.2d 394,·400 (Iowa 1992).

■ Patricia's income is similar to Mark's income, and Patricia has more education. Patricia is receiving a substantially equal property division. Patricia has been employed outside the home throughout the marriage and has established her own earning record for social security purposes. We modify to eliminate the alimony award.

The parties shall pay their own appellate attorney fees. Costs on appeal are taxed one-half to each party.

AFFIRMED AS MODIFIED.

DONIELSON, P.J., concurs.

HABHAB, J., dissents.

HABHAB, Judge, (dissenting).

I respectfully dissent. I agree with the trial court that the interest of the children will best be served by placing their custody with Patricia.

The majority recognizes Mark's assaultive behavior and expresses its concern as to Patricia's safety and the effect his conduct has on the children.

The trial court had the opportunity to view and hear the various witnesses who were called to testify. It tipped the scales in Patricia's favor. I would do likewise.

The record before us reveals a number of instances of abuse on Mark's part towards his wife. For instance, on cross-examination, Patricia testified:

BY MR. RUTHERFORD [Mark's attorney]:

Q. You did file an affidavit in this matter in August of 1989 in which you indicated that Mark assaulted, pushed, and harassed; is that correct? A. Please tell me some more.

Q. You signed it and you said he's been guilty of assaulting, pushing, harassing, and otherwise harming and insulting me. A. Yes. That's true.

Q. Tell me how it was that he hit; with his fists: What did he do? A. What it was I went, took the kids to the motel because I've had—Mark basically pushes. So, I took the kids out to his father's motel and he came and knocked the door down. And so then different times in the household he pushed me. He leaves bruises on me. He chokes me. He will sit across from me and slap me. And I keep trying to go back to be prevented from hitting. He has hit me in the back of the head. He gave me a concussion when we were first married.

Q. Were you hospitalized for that? A. No, sir.

Q. Did you seek medical attention for that? A. Yes, I did.

Q. And who is your doctor? A. Dr. Swanson.

Q. And did you ever make any report of that? A. No, sir. I was too young. I didn't know anything about doing that.

\* \* \* \* \* \*

Q. Any of the kids been present for these? A. Yes.

Q. First bruise that you've had? A. Yes.

Q. And you're saying that he has caused or raised marks on you? A. Yes.

Q. Bruised you? A. Yes.

Q. And you have sought medical attention for this? A. Yes.

Q. Also sought counseling for this; did you not? A. Yes.

Q. Tell me whether or not he has ever abused the children? A. Yes, he has.

Q. Tell me in what regard this has happened. A. Slapping, kicking, yelling, and screaming at them.

I would affirm.