**STATE of Iowa, Appellee,**

v.

**Bradley Lee WINTERS, Appellant.**

No. 03–0737.

Supreme Court of Iowa.

Jan. 14, 2005.

Kent A. Gummert of Gaudineer, Comito & George, L.L.P., West Des Moines, and Bradley Winters, pro se, for appellant.

Thomas J. Miller, Attorney General, and Karen Doland, Assistant Attorney General, for appellee.

CADY, Justice.

Bradley Lee Winters seeks further review of his judgment of conviction and sentence for possession of methamphetamine with intent to deliver, conspiracy to deliver, and failure to affix a tax stamp. He challenges the judgment and sentence on several bases. Because we find the district court abused its discretion in failing to dismiss the charges against Winters on speedy-trial grounds, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand to the district court for dismissal of the trial information.

## I. Background Facts and Proceedings

Winters' convictions resulted from events that occurred on August 28, 2002. On that date, law enforcement officers in Des Moines received information from officers in Mason City that Winters and his mother, Barbara Query, would be traveling to Des Moines that day to pick up a large amount of methamphetamine. The officers located the vehicle in Des Moines and conducted surveillance of Winters and Query throughout the day. They followed them to two locations in Des Moines and continued following them after they left Des Moines and began traveling north on Interstate 35.

A state trooper who was part of the surveillance convoy observed Winters' vehicle weave across the centerline and fog line several times. When Winters exited the interstate a short distance north of Des Moines, the trooper pulled him over. Before the vehicle stopped, the trooper noticed Winters and Query making furtive movements toward the console area be-tween the two front seats. When the trooper approached the vehicle to ask for Winters' driver's license, he noticed Winters had dilated pupils and body tremors, which he associated with the use of cocaine or methamphetamine. After Winters denied using narcotics, the trooper had him sit in his patrol car while they awaited a drug-sniffing dog.

When the dog arrived, it signaled the presence of drugs in Winters' vehicle and in the area of the patrol car where Winters was sitting. The officers then searched Winters and found a small quantity of methamphetamine on his person. They also searched Winters' vehicle and found almost a half pound of methamphetamine, $5000 in a paper bag, and various other items of evidence. Winters and Query were arrested.

The next morning, officers executed search warrants on the residences in Des Moines that Winters had visited on August 28. Officers seized various items indicative of methamphetamine use and distribution from both locations.

On October 9, 2002, the State filed a trial information jointly charging Winters, Query, Kathleen Stalker (who lived at one of the residences Winters visited on August 28), and Paul Hulbert (who was at one of the residences)[1] with possession with intent to deliver, conspiracy to deliver, and failure to affix a tax stamp. Winters was also charged in the information under the enhancement provisions of Iowa Code section 124.411 (2001), based on a prior conviction of a felony drug offense on March 27, 1998.

Winters was arraigned on October 10. At the arraignment, the district court set

1. Hulbert pled guilty, but the other three cases proceeded together.

the trial for December 9, 2002 and ordered a pretrial conference to be held on November 7.

Although Winters was represented by counsel, he filed a handwritten pro se motion to dismiss the enhancement portion of the trial information on October 14. He claimed the enhancement violated double-jeopardy principles. He also moved to merge the three counts of the trial information, claiming he could not be convicted of both a public offense and conspiracy to commit a public offense. Additionally, he filed a separate, detailed motion to suppress. The motion asserted the vehicle stop violated the federal and state constitutions.

The district court set the motions for a hearing on November 4, 2002. It subsequently continued the hearing and ordered the hearing on the motions to be rescheduled at the November 7 pretrial conference.

The pretrial conference was held on November 7. The district court entered an order following the conference confirming that the trial would be held on December 9. The order also reflected that the attorneys had no conflict with the trial date. The order further directed that discovery be completed per the rules of criminal procedure or further court order. The pending motions were noted in the order, but they were not heard or rescheduled for hearing.

On November 27, the district court held a status conference on the case. At the conference, the district court first reviewed the status of the case by noting that codefendants Query and Stalker had waived their speedy-trial rights and desired to continue the December 9 trial to enable them to engage in pretrial discov-

ery. The court further recognized that Winters also wanted to engage in discovery but would not waive his right to a speedy trial. Winters' attorney, as well as counsel for the codefendants, acknowledged the pending status of the case. Winters was then permitted to explain his position:

> The reason I don't feel I should have to waive any speedy trial and it shouldn't be violated is that from [October] 10 when I had my arraignment until the present time I feel that's sufficient time that they had to do depositions, hear the motions and all that. Otherwise, that was all just a waste of time. And I am incarcerated. . . .

Winters further explained that he desired to depose the State's witnesses prior to trial but believed there was adequate time to complete all discovery within the speedy-trial time period. Winters reminded the district court: "We still got . . . the rest of November, December and part of January." In response, the State acknowledged that there was an available trial date on January 6, 2003, one day prior to the expiration of the speedy-trial period. However, the prosecuting attorney told the district court that the State had approximately twenty witnesses, and he did not believe there was sufficient time within the speedy-trial period to take the depositions of these witnesses. The prosecutor also mentioned the existence of the pending motions as a reason to continue the trial.

Based on these statements, the district court ruled that there was good cause to continue the case beyond the speedy-trial deadline, and set the trial for February 17, 2003. The district court found it was not possible "as a practical matter" to rule on the pending motions and complete the desired discovery prior to the speedy-trial

deadline. It further found that holding the trial within the speedy-trial time period would deny the codefendants a fair trial because they would be unable to fully prepare for trial. Furthermore, the district court found that severing Winters' case would not help preserve his speedy-trial right because it had already found there was not enough time for Winters to complete discovery and for it to rule on the pending motions prior to the speedy-trial deadline.[2] The district court also observed that severance of the trials would create an imposition on witnesses and result in a greater expense to the state due to the duplication of discovery.

On February 6, 2003, Winters filed a motion to dismiss. He argued that his right to a speedy trial had been violated because there was no good cause for delay of the trial beyond the speedy-trial deadline. At a status hearing on February 12, the court severed the trials of Winters, Query, and Stalker. The court also considered the motion to dismiss and the pending motion to suppress. The court denied the motion to dismiss, stating that it was "basically nothing more than asking for a reconsideration of [the November 27] ruling." The court also denied the motion to suppress following a hearing. It found the stop of Winters' vehicle was permissible for two reasons: (1) it crossed the centerline; and (2) the officers had reasonable suspicion to justify an investigatory stop. The court also found there was probable cause to search the vehicle and that the search was thus justified under the automobile exception to the warrant requirement. Alternatively, the court found the search was justified as a search incident to arrest.

Winters' jury trial commenced on February 17, 2003—forty-one days after his speedy-trial deadline. On February 19, the jury found him guilty of all three counts. On April 29, 2003, the court sentenced him to seventy-five years each for the possession and conspiracy convictions and to five years for the tax stamp conviction, with the sentences to run concurrently.

Winters appealed. He argued: (1) the charges should have been dismissed on speedy-trial grounds, (2) the district court admitted inadmissible hearsay testimony, (3) his motion to suppress should have been granted, (4) he received an illegal and excessive sentence, (5) the statutes under which he was convicted were unconstitutionally vague, and (6) his trial counsel was ineffective. We transferred the case to the court of appeals. It affirmed the judgment and sentence. We granted further review.

## II. Standard of Review

■■■ We review a trial court's ruling on a motion to dismiss based on speedy-trial grounds for an abuse of discretion. *State v. Nelson,* 600 N.W.2d 598, 601 (Iowa 1999) (citing *State v. Todd,* 468 N.W.2d 462, 470 (Iowa 1991)). When speedy trial grounds are at issue, however, the discretion given to the district court narrows. *Id.* (citation omitted); *see also State v. Bond,* 340 N.W.2d 276, 279 (Iowa 1983) ("The discretion of the district court to grant a trial continuance for good cause shown under Iowa R.Crim. P. [2.33(2)(*b* )] is narrower than is the discretion in civil cases under Iowa R. Civ. P. [1.911]. 'The discretion to avoid dismissal in a criminal

---

**2.** Prior to the status conference, Winters wrote to the district court requesting a separate trial. The letter was dated November 19 and was eventually filed on December 9.

case is limited to the exceptional circumstance where the State carries its burden of showing good cause for the delay. This is the circumscribed discretion in review on appeal.' " (Citations omitted.)); 21A Am.Jur.2d *Criminal Law* § 1031, at 295 (1998) (stating that statutes and rules implementing the right to a speedy trial should be "strictly construed in favor of the liberty of the citizen, and all doubts are to be resolved in favor of the accused").

### III. Speedy Trial

 Iowa Rule of Criminal Procedure 2.33(2)(*b* ) provides:

> If a defendant indicted for a public offense has not waived the defendant's right to a speedy trial the defendant must be brought to trial within 90 days after indictment is found or the court must order the indictment to be dismissed unless good cause to the contrary be found.

Under this rule, a criminal charge must be dismissed if the trial does not commence within ninety days from the filing of the charging instrument "unless the State proves (1) defendant's waiver of speedy trial, (2) delay attributable to the defendant, or (3) 'good cause' for the delay." *Nelson*, 600 N.W.2d at 600 (citing *State v. Petersen*, 288 N.W.2d 332, 335 (Iowa 1980); *State v. Smith*, 573 N.W.2d 14, 17 (Iowa 1997); *Bond*, 340 N.W.2d at 279).

 The district court in this case found there was good cause for the delay. We have made it clear that good cause " 'focuses on only one factor: the reason for the delay.' " *Id.* at 601 (citation omitted). The attending circumstances "bear on the inquiry only to the extent they relate directly to the sufficiency of the reason itself." *Id.* (citations omitted).

Surrounding circumstances include: (1) the length of the delay, (2) whether the defendant asserted his or her right to a speedy trial, and (3) whether prejudice resulted from the delay. *Id.* at 601 n. 2. However, " '[i]f the reason for the delay is insufficient, the other factors will not avail to avoid dismissal.' " *Id.* at 601 (quoting *Petersen*, 288 N.W.2d at 335). *Compare id.* (finding the fact that the court had yet to rule on a motion to suppress, which was fully submitted over three months before, to be insufficient reason for trial to be delayed 137 days beyond the speedy-trial deadline), *with Todd*, 468 N.W.2d at 470 (finding good cause for delay when the court had yet to hold a hearing on motions to suppress that were filed by the defendants one week before trial was to begin and for which the State's witnesses were not available to testify until after the speedy-trial deadline).

 The district court found good cause for the delay in this case primarily based on the time needed to rule on pending motions and the time required for Winters to depose the State's witnesses. Generally, a defendant must accept the passage of time that is reasonably necessary for a court to hear and rule on dispositive pretrial motions. *Nelson*, 600 N.W.2d at 601 (citation omitted). Consequently, the time required for the court to rule on motions filed by a defendant can amount to delay attributable to the defendant and constitute good cause for the failure to comply with the speedy-trial deadline. *State v. Miller*, 637 N.W.2d 201, 204–05 (Iowa 2001). However, defendants do not waive their right to be tried within the speedy-trial deadline by filing timely pretrial motions. *Nelson*, 600 N.W.2d at 601. The pretrial process is set up to normally dispose of pretrial motions within the speedy-

trial deadline. *See* Iowa R.Crim. P. 2.11(4) (stating motions generally must be filed no later than forty days after arraignment).

■ Similarly, good cause for pretrial delay under the speedy-trial rule can result from the need to complete pretrial discovery. *State v. LaPlant,* 244 N.W.2d 240 (Iowa 1976). Yet, as with pretrial motions, defendants do not forfeit their speedy-trial rights by pursuing discovery of the State's evidence.

■ Our approach to good cause reveals that the determination of whether pretrial motions and pretrial discovery can excuse a failure to comply with the speedy-trial rule essentially rests on the strength of the underlying reasons for the delay in disposing of the motions or completing the discovery, not the mere existence of the motions or the request for discovery. In this case, the State failed to offer any reason to support its claim that the pending motions could not be heard before the expiration of the speedy-trial time period. Furthermore, the district court failed to offer any explanation. The district court did observe that the motions were filed pro se and should be recast by counsel. Nevertheless, this fact does not supply a reason to delay their consideration or to treat them differently than motions filed by counsel. The motions were properly captioned and articulated each claim with clarity. The court was required to consider them as any other motion. Furthermore, the conclusion by the district court that the motions could not be heard and ruled upon within the speedy-trial time period was made nearly six weeks before the deadline. Thus, not only was there no reason presented to explain why the motions were not heard before the district court granted the continuance, there was no reason provided to explain why the motions could not be heard within the time still remaining before the expiration of the speedy-trial period. In the absence of any underlying reason, the only ground in the record to support the continuance was the filing of the motions. This reason, without more, is insufficient.

Similarly, the record failed to show why the discovery Winters sought could not be completed prior to the expiration of the speedy-trial deadline. Although there was evidence of the number of witnesses the State expected to call at trial, there was no indication of the number of witnesses Winters, or the codefendants, desired to depose or the reason why those depositions could not be completed prior to the expiration of the speedy-trial deadline. The rules of procedure contemplate that depositions be taken within thirty days after arraignment. *See* Iowa R.Crim. P. 2.13(6). However, even assuming the district court extended the time for taking depositions, the record failed to disclose any reason why the depositions could not have been completed prior to the expiration of the speedy-trial deadline other than the bare assertion by the prosecutor. The burden on the State to establish good cause requires more.

■ Finally, we must consider the impact of the jointly charged defendants on the good-cause determination. We agree with the district court that the economy and convenience of a joint trial can be considerations in determining good cause to delay the trial of codefendants beyond the speedy-trial deadline. *See State v. Rodriguez,* 511 N.W.2d 382, 384 (Iowa 1994) (stay of the trial of the codefendant's case, which effectively stayed the trial of the defendant's case, established good cause for delay under the speedy-trial

rule). However, the convenience and economic benefits of a joint trial do not alone establish good cause and do not normally take precedence over a defendant's right to a speedy trial. *See Santiago v. State,* 698 So.2d 919, 920 (Fla.Dist.Ct.App.1997) ("[A] defendant's right to a speedy trial takes precedence over the state's convenience in trying co-defendants together. State 'convenience' in a joint trial is not of itself an exceptional circumstance ... justifying an extension of the speedy trial period." (Citations omitted.)). Similarly, the waiver of speedy trial by a codefendant does not, by itself, constitute a waiver of speedy trial by the other defendant. *See In re Edwayne V.,* 197 Cal.App.3d 171, 242 Cal.Rptr. 748, 750 (1987) ("[A] defendant cannot waive the rights of a codefendant to have a criminal proceeding commence within a period of time specified by statute." (Citation omitted.)); *Flores v. State,* 574 So.2d 1314, 1321 (Miss.1990) ("[S]ince the right to a speedy trial is a right personal to the accused, the right should not be waived because of delays occasioned by a co-defendant for which the accused was not in any way responsible." (citing *People v. Roberts,* 133 Ill.App.3d 731, 88 Ill.Dec. 773, 479 N.E.2d 386, 390 (1985))). Instead, the good-cause standard requires a careful balancing of the codefendant's rights to effective counsel and a fair trial against the defendant's right to a speedy trial, together with the State's desire to promote judicial economy. *See Arroyo v. Super. Ct.,* 119 Cal.App.4th 460, 14 Cal.Rptr.3d 462, 465 (2004).

In this case, Winters objected to a continuance and requested a severance of trial. He clearly asserted his right to a speedy trial. On the other hand, there was no evidence of any underlying reasons to support a conclusion that the remaining discovery sought by all defendants could not have been completed prior to the speedy-trial deadline. At the very least, the district court should have required the defendants to make an effort to complete discovery, considering there were nearly six weeks remaining prior to the speedy-trial deadline. Thus, the codefendants' rights to effective counsel and a fair trial were not seriously implicated.

Accordingly, the only remaining factors to support good cause were judicial economy and waiver by the codefendants. Yet, judicial economy due to a joint trial is not a helpful consideration without underlying evidence supporting the need for the continuance of the joint trial beyond the speedy-trial deadline. In the end, the continuance was granted by the district court because the codefendants waived their right to a speedy trial. Under the record developed in this case, this was insufficient to establish good cause for delay in the trial of the remaining defendants. Under all the circumstances, the district court abused its discretion in granting a continuance of the case beyond the speedy-trial deadline. We are obligated to enforce the speedy-trial rule and dismiss the trial information.

## IV. Conclusion

Because the State failed to carry its burden to prove good cause, Winters' motion to dismiss the charges against him on speedy-trial grounds should have been granted. *See Nelson,* 600 N.W.2d at 602. Accordingly, we must reverse the judgment on his convictions and remand to the district court to dismiss the trial information. *Id.* We need not reach the other issues raised on this appeal.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT**

JUDGMENT REVERSED AND RE-MANDED.