MANSFIELD, Justice.
In this case, we are asked to review a district • court’s decision to commence a criminal trial on June 26 but to postpone the presentation of evidence to July 7, eight days after the June 29 expiration of the speedy trial deadline. The court grant *700 ed this postponement at the State’s request based on the unavailability of medical experts.
On our review, we conclude the district court did not abuse its discretion. We assume without deciding that the district court’s use of a start-and-stop procedure to avoid the speedy trial deadline should be analyzed under the same standards as a straightforward extension of the speedy trial deadline. Nevertheless, under that law, we find that the court acted within its discretion. In addition, we conclude the defendant’s other appeal issues are without merit. Accordingly, we vacate the decision of the court of appeals and affirm the defendant’s convictions and sentence.
I. Background Facts and Proceedings.
On February 22, 2015, Matthew Browning was working alone in a tool shop. The defendant, Christopher McNeal, entered the shop and began repairing a wheelchair that he had dropped off earlier. Browning asked McNeal to leave because the shop’s owner did not want McNeal there. McNeal ignored him, kept working on the wheelchair, and asked Browning if he had any drugs to share. Browning replied that he did not. Browning again asked him to leave, this time using a raised voice and gesturing to McNeal with a sledgehammer in hand. The next thing Browning remembered was McNeal leaving the shop. Browning awoke hours later with blood frozen to his face and feeling “[t]errible.’’ One of the sledgehammers from the shop went missing that night and was never located.
Browning was eventually diagnosed with an epidural hematoma and a lineal fracture in his skull based on an examination by Dr. John Treves. Several days after the assault, Browning told the owner of the shop, “Oh God. [McNeal] hit me in the head with a hammer.” Later, Browning saw McNeal and confronted him, asking McNeal why he would “do something like that.” McNeal replied, “Well, you were shaking a hammer at me. I just beat you to it.”
When McNeal was interviewed by police, he claimed he was not at the shop at all that day. Asked where he was instead, McNeal responded that he “get[s] around” and was at the “other end of town.”
On March 30, the State charged McNeal with attempted murder, see Iowa Code § 707.11(1) (2015), first-degree burglary, see id. § 713.3(l)(c), willful injury resulting in serious injury, see id. § 708.4(1), assault while participating in a felony, see id. § 708.3(1), and assault with a dangerous weapon, see id. § 708.1(2)(c). The State also gave notice that it would seek the mandatory five-year minimum sentence of confinement if the jury found that McNeal was in possession of a “dangerous weapon,” i.e., a sledgehammer, while committing a forcible felony. See id. § 902.7. McNeal pled not guilty and demanded a speedy trial pursuant to Iowa Rule of Criminal Procedure 2.33(2)(6). The speedy trial deadline in this case was June 29.[1]
Trial was set for June 9. However, on that. date, the following exchange took place regarding plea negotiations:
THE COURT: This case is set for trial this morning. What are we doing?
MR. TENNY: Well, Your Honor, there has been a plea agreement offered
*701 by the State. And as I—initially Mr. McNeal was considering it, but as of last night, I understand he no longer wishes to accept that plea agreement. He’s asked the State if they would consider a total of five years, concurrent on everything; and from what I understand, the State is not .agreeable to that.
[[Image here]]
THE COURT: So you’re wanting to just make a record on the plea offer?
MR. TEÑNY: Right. And I’ve explained all of this. I was at the jail last night until 6:00 p.m. talking with Mr. McNeal about this offer and—and I also explained that there’s a potential at risk that it could turn out way worse for him if he’s convicted of any of the larger charges, you know, total,
•Under the proposed plea agreement, McNeal would have pled guilty to willful injury causing serious injury in this case and willful injury causing bodily injury in an unrelated case. See id. § 708.4(1), (2). All remaining charges would be dismissed. Neither of those charges would carry a mandatory, minimum term of incarceration, and the State would recommend concurrent sentences, resulting overall in an indeterminate ten-year sentence. Conversely, if the offer was rejected, the State informed McNeal that it would proceed with all the charges in the trial information, request consecutive sentences, and seek the dangerous-weapon-forcible-felony enhancement. Notably, the attempted murder charge carried a mandatory minimum term of seventeen and one-half years in prison. See id. § 902.12(2).
On the record, McNeal rejected the plea agreement. At the same time, he declined to waive the speedy trial deadline. Accordingly, the trial was rescheduled to June 23.
Before then, on June 16,.-the parties returned to court. The lead prosecutor explained,
[I]t was our understanding as [McNeal] came to court last week that we had a plea‘deal. And then -on the 9th of June, pretty much everything fell apart in terms of the defendant wishing to take the plea offer that was made.
■ And so the State then has been working since that time to schedule the expert witnesses in this case that we have. ... [W]e have been unable to nail down times that our—where our experts are available in this case. The State understands that—And when I say available, I mean next,week, because we’re supposed t,o start trial on Tuesday, June 23rd....
Now, there are, I think, five to seven doctors named on the trial information. The three that we need to prove the elements in this case of the serious injury are unavailable. One is in Europe, one is a neurosurgeon and is in surgery, next week and can’t inconvenience, obviously, the people that need brain surgery, and the other is a radiologist that is unavailable because of work commitments, as well.
The prosecutor went on,
[W]e’re in a little bit of flux in terms of what our schedule is. This is certainly not a situation that the State would, normally find itself in or want to find itself in, to be noticing witnesses this late. But because of the representation or understanding that the plea offer was going to be taken, we simply had not noticed or attempted to schedule these witnesses to come .in for trial, you know, as of last week.
The State added that one of the three witnesses would not be back from Europe until June 30. That witness was Dr. Crystal Seluk, a physician who had been listed with the original minutes of testimony on March 30. The State proposed that a jury *702 could be selected on June 23, and the case could then be continued “until such time as the State is able to then schedule [the] expert witnesses.”
At this point, the parties made a record once more on the State’s plea offer and the defendant’s unwillingness to accept that offer.
The court then asked the defense to address the State’s proposal to have the jury picked on June 23 followed by a recess until the experts were available. At first, defense counsel did not respond to this proposal, but instead asked the State to reconsider a single indeterminate five-year sentence to resolve all charges. The State again declined this counteroffer, citing “the facts in this case ... and the injuries to the victim.”
Defense counsel then explained that the State’s plea offer had not arrived until June 2. Initially, the defendant had intended to accept it, and preparations had been made on both sides for a plea hearing to occur on June 9. However, the defendant had “a change of heart” on June 9.
Defense counsel objected to the State’s proposal to take a trial hiatus for the expert witnesses. Defense counsel claimed the State had known about these witnesses all along but had not listed them until after June 9. (This was partially incorrect because the original minutes of testimony included Dr. Seluk.) Defense counsel added that “everyone knows that medical personnel are difficult to get to court.” Defense counsel urged,
Now, the State can present whatever witnesses they have on June 23rd, those who are available, and present their case in that way, or this—it would be a good reason to settle the case, as—as we’ve— you know, as we’re requesting.
The prosecutor responded by correcting the record as to Dr. Seluk. She explained, “Dr. Seluk had been named all along and yet is still unavailable.” The prosecutor added that it would have been “horribly inconvenient” to have medical professionals scheduled to show up on June 9 when both sides thought a plea was going to be entered.
After hearing these arguments, the court concluded, “I think it’s clear, with one of the doctors out of the country from June 23rd until June 30th, that’s a problem. And I think there is a good cause to adjust the scheduling of the trial.” The court thus ordered that the jury could be impaneled on June 23, but that proof would not commence until July 7. Yet the court added,
[W]e need to get them going July 7, at the very latest. And if there’s still a doctor in Europe or one doing surgery or whatever it is, you’ll just have to subpoena them and get them here on that day or do without them.
On June 23, a prosecutor made allegedly improper comments during jury selection for a different case. Because the venire was also going to be used to select the jury for McNeal’s case, McNeal moved for a mistrial. The district court granted the motion and reset jury selection for June 26. At approximately 12:30 p.m. on the 26th, a jury was selected, sworn, and admonished.
Eleven days later, on July 7, the State called four witnesses, including Dr. Treves, the neurosurgeon who had éxamined Browning at the hospital, but not including Dr. Seluk. The defense did not call any witnesses. Following closing arguments, the jury received the case at approximately 4:45 p.m. That evening, the jury returned a verdict, finding McNeal guilty of the lesser included offenses of assault with intent to inflict serious injury, criminal trespass, and willful injury causing serious injury. The jury also found that McNeal *703 was in possession of a dangerous weapon at the time of the assault.
The assault conviction merged with the willful-injury-causing-serious-injury conviction. On the latter conviction, due to the weapon enhancement, McNeal received a ten-year sentence with a mandatory minimum term of incarceration of five years. See id. § 902.7. McNeal also received a concurrent one-year sentence on the criminal trespass charge.
McNeal appealed. He argued that the district court’s June 16 order bifurcating jury selection from the rest of the trial should be treated as an extension of the speedy trial deadline, for which good cause was lacking. McNeal also argued that the evidence was insufficient to sustain his convictions, that his trial counsel was ineffective in failing to object to evidence of his drug use or the admission of hearsay testimony, and that the district court erred in allowing a demonstrative sledgehammer to be shown to the jury. We transferred the appeal to the court of appeals.
The court of appeals found that the stop- and-start procedure did not have the effect of bringing McNeal to trial on June 26, before the expiration of the speedy trial deadline. It then determined there was no good cause shown for the delay granted by the district court to July 7 under speedy trial standards. It therefore reversed McNeal’s convictions and remanded for dismissal without reaching his other appellate arguments.
We granted the State’s application for further review.
II. Standards of Review.
We review a district court’s application of the procedural rules governing speedy trial for correction of errors at law. State v. Miller, 637 N.W.2d 201, 204 (Iowa 2001); State v. Finn, 469 N.W.2d 692, 693 (Iowa 1991). The district court’s findings of fact are binding upon us if supported by substantial evidence. State v. Bond, 340 N.W.2d 276, 279 (Iowa 1983). “Statutes and rules implementing the right to a speedy trial receive ‘a liberal construction, designed to effectuate [their] purpose’ of protecting citizens’ liberty.” State v. Taylor, 881 N.W.2d 72, 76 (Iowa 2016) (alteration in original) (quoting 21A Am. Jur. 2d Criminal Law § 930, at 187 (2016)).
We review a district court’s deter-, mination whether the State carried its burden to show good cause for the delay for abuse of discretion. State v. Winters, 690 N.W.2d 903, 907 (Iowa 2005). Nevertheless, a district court only-has, “circumscribed” discretion to hold a trial beyond the ninety-day deadline. Id. at 908 (quoting Bond, 340 N.W.2d at 279); see Miller, 637 N.W.2d at 204 (“The trial court’s discretion to avoid dismissal under [the rule] is circumscribed by the limited exceptions to the rule’s mandate.”).
“Sufficiency of evidence claims are reviewed for correction of errors at law, and we will uphold a verdict if substantial evidence supports it.” State v. Ramirez, 895 N.W.2d 884, 890 (Iowa 2017). We review ineffective-assistance-of-counsel claims de novo. State v. Parker, 747 N.W.2d 196, 203 (Iowa 2008). “[T]he court may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief.” State v. Lopez, 872 N.W.2d 159, 169 (Iowa 2015). Finally, rulings on demonstrative evidence are reviewed for an abuse of discretion. State v. Thornton, 498 N.W.2d 670, 674 (Iowa 1993); State v. Henderson, 268 N.W.2d 173, 179 (Iowa 1978).
III. Even Assuming McNeal Was Not “Brought to Trial” Until July 7, the District Court’s Finding of Good Cause Was Within Its Discretion.
Iowa Rule of Criminal Procedure 2.33(2)(¾) provides, ■
*704 If a defendant indicted for a public offense has not waived the defendant’s right to a speedy trial the defendant must be brought to trial within 90 days after indictment is found or. the court must order the indictment to be dismissed unless good cause to the contrary be shown.
For purposes of this appeal, we will assume without deciding that McNeal was not brought to trial on June 26, the date when the jury was impaneled and sworn. But see State v. Jones, 281 N.W.2d 13, 17 (Iowa 1979) (“We ... now hold that a defendant is ‘brought to trial’ ... when the jury is impaneled and sworn.”). We will consider, rather, whether the district court abused its discretion in finding “good cause to adjust the scheduling of the trial,” measured against speedy trial requirements.
Our caselaw on the speedy trial requirements under rule 2.33(2)(6) is fairly well established. “We have made it clear that good cause ‘focuses on only one factor: the reason for the delay.’” Winters, 690 N.W.2d at 908 (quoting State v. Nelson, 600 N.W.2d 598, 601 (Iowa 1999)). Yet because any “delay cannot be evaluated entirely in a vacuum,” we also consider surrounding circumstances such as the length of the delay, whether the defendant asserted his right to a speedy trial, and whether prejudice resulted from the delay. Miller, 637 N.W.2d at 205 (quoting State v. Petersen, 288 N.W.2d 332, 335 (Iowa 1980)); accord Winters, 690 N.W.2d at 908. Hence, as we have explained, these surrounding circumstances essentially operate on a sliding scale:
The shortness of the period, the failure of the defendant to demand a speedy trial, and the absence of prejudice are legitimate considerations only insofar as they affect the strength of the reason for delay. This means that, to whatever extent the delay has been a short one, or the defendant has not demanded a speedy trial, or is not prejudiced, a weaker reason will constitute good cause. On the other hand, if the delay has been a long one, or if the defendant has demanded a speedy trial, or is prejudiced, a stronger reason is necessary to constitute good cause.
Miller, 637 N.W.2d at 205 (emphasis omitted) (quoting Petersen, 288 N.W.2d at 335). We have noted that “most, if not all, cases justifying reversal based on speedy-trial violations involve delays numbering weeks or months, not days.” Id,
Here, the postponement was relatively minimal—eight days past the speedy trial deadline. The defendant does not claim any resulting prejudice. Although these considerations do not eliminate the State’s duty to show a valid reason for the delay, the reason does not have to be as strong.
The district court’s good-cause finding is reviewed for an abuse of discretion, although that discretion is circumscribed:
We review a trial court’s ruling on a motion to dismiss based on speedy-trial grounds for an abuse of discretion. However, that discretion is a narrow one, as it relates to circumstances that provide good cause for delay of the trial.
State v. Campbell, 714 N.W.2d 622, 627 (Iowa 2006) (citations omitted).
In our view, the district court here considered and properly weighed relevant factors in finding good cause for delaying the presentation of proof until July 7. It acted within its discretion.
First, the State demonstrated that the problem was expert witness unavailability due to circumstances beyond the State’s control. The State explained that it needed to call three of its listed medical experts *705 relating to the serious injury. Two of the experts, a neurosurgeon and a radiologist, were unavailable the week of June 23 because of work commitments.
Most importantly, as emphasized by the district court, the third expert—Dr. Se-luk—was out of the country and would not be returning until after the speedy trial deadline. Although the State made a number of expert witness designations in June, Dr. Seluk was not a last-minute designation; rather, she had been designated on March 30 when the trial information was filed. And even though Dr. Treves, thé neurosurgeon, could have been named earlier, all expert witness designations complied with the rule. See Iowa R. Crim. P. 2.19(2) (“Additional -witnesses ... may be presented by the prosecuting attorney if the prosecuting attorney has given the defendant’s attorney of record ... a minute of such witness’s evidence ... at least ten days before the commencement of the trial.”).
The State also demonstrated that some delay in its trial preparation was understandable because it had believed the case would be resolved on a guilty plea. It took everyone by surprise, including defense counsel, when the defendant declined the State’s plea offer on June 9. As expected, that offer turned out to be significantly more favorable to the defendant than the trial outcome.
We have addressed expert witness unavailability before as a justification for extending the speedy trial deadline. In Petersen, we held that good cause existed to postpone trial fourteen days past the speedy trial deadline because one of the State’s expert witnesses was on vacation during a rescheduled trial date. 288 N.W.2d at 334-35. Trial in Petersen had been initially scheduled for May 24, well before the June 28 speedy trial deadline. Id. at 334. However, after defense counsel realized he had several other trials scheduled for May 24, he informally “requested the prosecutor’s consent to a continuance.” Id. Unbeknownst to the prosecutor, defense counsel rescheduled his other cases, never asked the court for a continuance, and appeared for trial on May 24. Id. The prosecutor believed the case had been continued due to the earlier conversation and was not ready to try the case. Id. Trial was therefore continued to June 14. Id. Six days before that date, the State moved for another continuance “because a material expert witness was on vacation out. of state” at the time of .the rescheduled trial. Id. Trial was continued again to July 12. Id. •
On appeal, the defendant claimed that the fourteen-day delay violated his consti-tutionai and statutory rights to speedy trial. Id. We rejected both claims and concluded there was good cause for the delay, reasoning,
The first trial date was passed on the basis of an honest misunderstanding of counsel. The prosecutor reasonably believed that the defendant’s attorney wanted the case continued and was to file a motion for continuance. The second trial date was not fulfilled because of the absence of a witness.
Id. at 335.
This case bears several important similarities .to Petersen. In both cases, the State was not blameless and its diligence could have been criticized in hindsight. Yet the bottom line was that in both cases, the rescheduled trial date conflicted with the schedule of at least one material expert witness, a fact which the State brought to the court’s attention before trial. That was enough to justify a brief extension past the speedy trial deadline.
It should be noted that the defendant did not demand a speedy trial in Petersen. *706 Id. But we explained that this was just one piece of the puzzle—it was only one of three factors why a “less serious reason” would justify the delay. Id. The other two factors, “a relatively short” delay and a lack of significant prejudice to the defendant, were present both in Petersen and here. Id.
Although McNeal opposed the adjustment in the trial schedule and asserted his speedy trial rights, it is noteworthy that he did not contest the reasons offered by the State for the unavailability of the medical witnesses or the State’s reasons for why their testimony was needed. This is significant because when a trial court exereises discretion, it often takes its cue from the give-and-take of the parties’ arguments. Had defense counsel questioned the prosecutor’s representations regarding the unavailability of the three medical witnesses and the need for their testimony, the district court might have insisted on something more than the prosecutor’s rather brief professional statements in these subject areas.
Given what later transpired at trial, the grounds for adjusting the trial schedule appear less strong today than they undoubtedly appeared to the district court on June 16. The State decided not to call Dr. Seluk, even though her absence from the country had been the primary reason for granting the State’s motion. But this does not mean the district court abused its discretion in finding good cause on June 16.
Even with hindsight, the State’s concern about missing medical proof was legitimate. At trial, the defendant ultimately disputed three important points: (1) whether the victim, Browning, could recall correctly any of the events of February 22 given the blow he received; (2) whether Browning had been hit in his head by a sledgehammer or suffered his injury in some other way (say, accidentally); and (3) whether Browning’s injury was serious. Medical testimony was needed in all three areas.
As things turned out, this medical testimony came entirely from one witness—Dr. Treves. However, this does not gainsay the potential importance of Dr. Seluk, an ear, nose, and throat specialist. Dr. Treves could not opine on Browning’s hearing loss. In his testimony, Dr. Treves admitted that Dr. Seluk was evaluating and following the hearing issue. If Dr. Seluk had appeared at trial, she presumably would have testified regarding Browning’s permanent hearing loss in his left ear. Later in the trial, Browning was allowed to testify without a defense objection that he was suffering “from [an] inner neuro hearing loss of 90 percent in [his] left ear.” Still, to confirm the limits of the medical proof that had been presented, defense counsel forced Browning to admit on cross examination that “Dr. Treves didn’t do any hearing tests on [him].” (Emphasis added.)
In closing argument, the prosecutor repeatedly emphasized to the jury that the ninety percent hearing loss amounted to a serious injury. If defense counsel had successfully objected to Browning’s lay testimony about his permanent hearing loss, possibly Dr. Seluk would have been called to testify after all.
The district court likely would have acted within its discretion if it had done what McNeal asked for on June 16—namely, ordered the entire trial to begin on June 23, including the presentation of proof. Furthermore, if the district court had been aware of the fact that Dr. Seluk ultimately would not testify at trial, we think the court probably would have done what the defendant asked for on June 16. In that event, we presume the State would have found a way to present its case.
*707 Regardless, we should not be evaluating the June 16 good-cause determination based on subsequent events.[2] Given the record and the parties’ arguments at the time, the district court took a reasonable course of action. When the prosecutor’s professional statements were not disputed by defense counsel, the court accepted them. Although defense counsel clearly stood on his client’s speedy trial rights, he also seemed focused on trying to use the situation to obtain a more favorable plea offer from the State. At the close of the hearing, the court allowed the presentation of evidence to be' delayed until July 7, but no further.
In addition to Petersen, we also take guidance from a case in which we found plea negotiations to constitute good cause for a trial delay past the speedy trial deadline. See State v. LaMar, 224 N.W.2d 252, 254 (Iowa 1974). In LaMar, the parties engaged in plea bargaining for several weeks around the scheduled time of trial. Id. at 253. The prosecutor later testified that he had three or four conversations with defense counsel, and in each one defense counsel had indicated there would likely be a guilty plea. Id. at 254. After the speedy trial deadline passed and plea negotiations fell through, the prosecutor had the case assigned for the next available trial date. Id. Considering the circumstances of that case, we affirmed the district court’s finding of good cause, although one could certainly fault the State for not starting and concluding the plea negotiations more diligently. Id. There, as here, the plea negotiations began shortly before the scheduled trial date, but unlike in the present case, the plea negotiations even continued after the speedy trial deadline without the prosecutor taking action to address that deadline. Id.
Additionally, in State v. Mount, we upheld a district court’s decision to reschedule a trial to commence on September 29, six days after the speedy trial deadline would have expired. 422 N.W.2d 497, 499 (Iowa 1988), overruled on other grounds by State v. Royer, 436 N.W.2d 637, 639-40 (Iowa 1989). Our opinion illustrates how we considered the matter from the practical perspective of the trial judge who was on the scene and had to make the on-the-spot determination:
[T]he court had two options: schedule two jury trials in Story County where ordinarily only one jury trial would be in session at any given time; or delay the latter case until September 28. In the trial court’s judgment, neither alternative was acceptable. The first would disrupt the trial calendar in the county to which [another district court judge] was already assigned on September 23. The second would unfairly burden the State by requiring it to reissue subpoenas and redo travel arrangements for numerous out-of-state witnesses.
*708 Id. Likewise, putting ourselves in the shoes of the district judge who had to rule in this case on June 16, 2015, we find no abuse of discretion.[3]
IV. Remaining Issues.
We now turn to McNeal’s remaining arguments on appeal.
First, McNeal challenges the sufficiency of the evidence supporting his convictions. However, Browning’s testimony established that he and McNeal were the only people in the shop and that McNeal had refused Browning’s request to leave. When Browning came to after blacking out, McNeal was actually departing, Browning had suffered a severe blow to the side of his head, and a sledgehammer was missing. As a result of the blow, Browning suffered a skull fracture and permanent injuries. McNeal later claimed, vaguely and unpersuasively, that he had not been in the shop that day because he “get[s] around” and was “at the other end of town.”- The evidence of guilt was sufficient.
McNeal next claims that counsel should have objected to evidence of McNeal’s drug use as impermissible propensity evidence under Iowa Rule of Evidence 5.404(6). However, the record indicates that the evidence was used to prove motive-—specifically, that McNeal had shared drugs with Browning “two to three days before” and McNeal was demanding drugs from Browning on February 22 before he allegedly struck him. There was clear proof that both McNeal and Browning used drugs, thereby diminishing the potential prejudice in a case where McNeal was charged with assaulting Browning. In any event, the drug use helped provide-an-explanation for the assault. Counsel was not ineffective in failing to object to this evidence. See State v. Nelson, 791 N.W.2d 414, 425-26 (Iowa 2010) (finding evidence of drug dealing that was relevant to motive in a murder case was not excludable under rule 5.404(6)); State v. Crawley, 633 N.W.2d 802, 808 (Iowa 2001) (finding evidence of drug use admissible, to prove.motive for committing a forgery).
McNeal also claims his attorney was ineffective for failing to object to hearsay testimony of Paul Aleksiak, the shop owner. Aleksiak testified that Browning had told him, “Oh God. [McNeal] hit me in the head with a hammer.” Without deciding whether such a statement would qualify for a hearsay exception, we conclude *709 that counsel was not ineffective because this testimony was cumulative. See State v. Schaer, 757 N.W.2d 630, 638 (Iowa 2008) (finding no prejudice from hearsay when it was cumulative of other properly admitted testimony). Browning testified that while his initial memory of the assault was hazy, he later recalled that McNeal must have hit him with a sledgehammer. This is also consistent with testimony from a detective, who testified that Browning’s memory had improved in the days after the assault and Browning had identified McNeal as the assailant.
Finally, McNeal claims the district court erred when it allowed the State to display a replica of the missing sledgehammer at trial over his objection. Browning'testified that the replica looked “[v]ery similar” to the sledgehammer that went missing the night of the assault. It was made clear to the jury that the replica was not the original. The replica was not admitted into evidence. Under these circumstances, the district court did not abuse its discretion when it allowed the replica sledgehammer to be used as demonstrative evidence. See Henderson, 268 N.W.2d at 178-79 (finding no reversible error in the admission into evidence of an experiment gun that was not the actual gun).
V. Conclusion.
For the foregoing reasons, we vacate the decision of the court of appeals and affirm McNeal’s convictions and sentence.
DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.
Cady, C.J., and Waterman and Zager, JJ., join this opinion. Cady, C.J., files a concurring opinion in which Waterman, J., joins. Zager, J., files a separate concurring opinion in which Waterman, J., joins. Appel, J., files a dissenting opinion in which. Wiggins and Hecht, JJ., join.

. The parties seem to have assumed that the speedy trial deadline ended on Friday, June 26. However, there is no dispute that Sunday, June 28 was ninety days from March 30. Iowa Rule of Criminal Procedure 2.33(2)(⅛) therefore required the trial to commence by Monday, June 29, unless good cause was shown. See State v. Johnson, 216 N.W.2d 335, 336-37 (Iowa 1974); see also Iowa Code § 4.1(34).

. In reviewing a district court ruling for abuse of discretion, it makes sense to consider the facts and circumstances as they existed when the district court ruled. We have said so expressly in other contexts. See Whitley v. C.R. Pharmacy Serv., Inc., 816 N.W.2d 378, 389-90 (Iowa 2012) (holding that the district court’s sanction in a discovery dispute was appropriate "[b]ased on the circumstances existing at the time the decision was made”); State v. Clark, 464 N.W.2d 861, 864 (Iowa 1991) (upholding the district court’s ruling on a motion to sever based on the "complete record ... at the time of the trial court's ruling”); Stanford v. Iowa State Reformatory, 279 N.W.2d 28, 35 (Iowa 1979) (finding no abuse of discretion in rejecting a motion to reopen testimony even though "at this time, with the benefit of hindsight and the offer of proof .. .• it would appear that much could have been made of [the evidence]”); see also In re Marriage of O’Brien, 491 N.W.2d 202, 204 (Iowa Ct. App. 1992) ("We look only to the reasons advanced when the motion for continuance was made in our review of this issue.”). •

. The court of appeals cited Taylor, 881 N.W.2d at 77, in its decision. We think that case is distinguishable. In Taylor, the State took no action with respect to the speedy trial deadline until the defendant moved to dismiss the charges, approximately six weeks after the deadline had already passed. Id. at 74. The State then claimed it had not even been aware of Taylor’s whereabouts until two days after the expiration of the speedy trial deadline. Id. at 78. Taylor, however, referred to a letter at the hearing showing that the local county sheriff had been informed of her incarceration in another county jail one month before the expiration of the deadline. Id. at 75. We concluded that "the State did not meet its burden of showing good cause for the delay* ” Id. at 78. We explained,
The State did not present any evidence to show due diligence in attempting to locate Taylor and it could not deny that Polk County contacted the Story County sheriff upon Taylor’s arrest in Polk County in light of the outstanding Story County warrant. The State simply claims a generalized and even implausible communication problem.
Id. at 78-79.
This case presents a different scenario—not an after-the-fact effort to justify a missed deadline with a generalized and implausible communication problem, but a timely motion to avoid the effects of the deadline based on uncontested professional statements about expert witness unavailability and the need for those experts.