## IN THE COURT OF APPEALS OF IOWA

No. 20-0312
Filed January 21, 2021

**CHRISTOPHER ROBY,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, Linda M. Fangman, Judge.

Christopher Roby appeals the denial of his application for postconviction relief. **AFFIRMED.**

Steven E. Goodlow of Goodlow Law Firm, Albia, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

Considered by Mullins, P.J., and May and Schumacher, JJ.

**MULLINS, Presiding Judge.**

In December 2014, Christopher Roby entered *Alford*[1] pleas to numerous charges in two criminal cases stemming from separate events—conspiracy to commit intimidation with a dangerous weapon and felon in possession of a firearm in one case, and two counts of first-degree burglary and one count of domestic abuse assault by strangulation causing bodily injury in the other. The minutes of evidence and attachments in the second case disclosed Roby went to the residence of a woman and a child he shares with the woman, "broke into her apartment, and strangled and bit her." The female showed police officers "where Roby had pried open the screen to the front window, breaking it," and "Roby came through the front window [and] pushed/threw her down and strangled her by straddling her and placing both hands around her neck." The female grabbed the child and made it to her vehicle outside. She was followed shortly by Roby, who opened the vehicle door and punched and bit her. At the time of the foregoing, there was a valid no-contact order in place between Roby and the child, which prohibited Roby's physical presence in the home. The female exhibited injuries consistent with her report of Roby's acts to law enforcement.

In December 2015, Roby filed an application for postconviction relief, in which he referenced and attached a "[d]ocument from the victim explaining the crime wasn't committed." The document, dated November 18, 2014, prior to

---

[1] *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) ("An individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he [or she] is unwilling or unable to admit his [or her] participation in the acts constituting the crime.").

Roby's entry of his pleas and previously received by the prosecutor and defense counsel, provided:

> I just wanted to inform you that I do not want to appear at any court arrangements. [Roby] did have a key that he came through the apartment with. We had an argument that turned into a physical fight inside and outside the apartment as well as in the car . . . . We argued back and forth for a long time until my neighbors called the police. I never wanted the police over to my place or to have any charges against [Roby].

In his amended application, Roby claimed, among other things, his attorney in the criminal proceeding was ineffective in failing to properly investigate the case and depose the victim.

At the postconviction-relief trial, Roby's criminal counsel testified to his recollection of the letter from the victim and Roby's knowledge of the same prior to entering his plea. He testified the letter, noting Roby had a key to the residence, was inconsequential due to the existence of a no-contact order prohibiting his presence in the residence at the time. Counsel confirmed his recollection of speaking with Roby about the letter and elements and circumstances of the crimes, but Roby "made the decision that he wanted to cooperate" with the State, "and he wanted to plead guilty and take the agreement." Counsel added, based on trial strategy, he would not have deposed the victim because the letter was different from the victim's initial report to law enforcement and "that would have raised issues with her credibility. And . . . it kind of flew in the face of some of the physical evidence." In his testimony, Roby acknowledged he knew a no-contact order was in place and he had no right, license, or privilege to be at the victim's residence.

Following trial, the court denied Roby's application for postconviction relief. Roby appeals. Appellate review of postconviction-relief proceedings is typically

for correction of errors at law, but where claims of ineffective assistance of counsel are forwarded, our review is de novo. *See Diaz v. State*, 896 N.W.2d 723, 727 (Iowa 2017). Because Roby's claim concerns the effectiveness of trial counsel, he must prove by a preponderance of the evidence that (1) his counsel failed to perform an essential duty and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018). We "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (quoting *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015)).

Roby claims his counsel was ineffective in allowing him to plead guilty following the victim's purported recantation of her allegations. He highlights the victim's statement that he had a key to the apartment, which he believes raises questions about "whether a factual basis could be made . . . regarding his right, license or privilege" to be present, and counsel was under a duty to investigate further and depose the victim. Upon our de novo review, we are unable to conclude counsel failed to perform an essential duty or Roby suffered prejudice. As to counsel's performance of duties, "we will not reverse where counsel has made a reasonable decision concerning trial tactics and strategy." *State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006) (citation omitted). And counsel strategically declined to investigate the victim's supposed recantation given its stark inconsistency with the victim's initial report and the physical evidence, predicting credibility issues. We find this reasonable. On the issue of prejudice, there is no reasonable probability Roby would have insisted on going to trial had counsel deposed the victim. *See State v. Straw*, 709 N.W.2d 128, 136 (Iowa

2006). Roby knew about the potentially exculpatory nature of the letter and still chose to accept the State's plea agreement to significantly reduce his sentencing exposure and the potential filing of federal gun charges.

We conclude counsel was not ineffective as alleged and affirm the denial of Roby's application for postconviction relief.

**AFFIRMED.**