# IN THE COURT OF APPEALS OF IOWA

No. 23-1613
Filed October 30, 2024

**WILLIAM EDGAR BURTON III,**
      Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
      Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, David Nelmark, Judge.

William Burton III appeals the district court's denial of his application for postconviction relief. **AFFIRMED.**

Sonia M. Elossais of Carr Law Firm, P.L.C., Des Moines, for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee State.

Considered by Greer, P.J., and Schumacher and Langholz, JJ.

**SCHUMACHER, Judge.**

William Burton appeals the district court's denial of his application for postconviction relief following his 2019 conviction for second-degree robbery. Burton claims his trial counsel was ineffective by failing to object to an improper jury instruction. Upon our review, we affirm.

## I.     Background Facts and Proceedings

In this court's prior ruling affirming Burton's conviction on direct appeal, we set forth the following facts:

> Dustin Hammond knew Mikayla Croy as Minnie Molly. Minnie Molly invited Hammond to an apartment complex on January 8, 2018. Hammond believed they were going to hang out at her friend's borrowed apartment and smoke marijuana. However, Croy and Burton had previously discussed a plan for Croy to lure Hammond to the area and Burton would rob Hammond at gunpoint.
> When Hammond arrived at the south-side apartment to meet Croy, she took him into the apartment's common area. She then told him it was the wrong building and led Hammond back down the hall to leave. On the way out, Burton passed them in the hallway. Hammond testified, "And as soon as I passed his shoulder, he turned around and put a gun to the back of the head, grabbed m[e] by the shoulder, pushed me out of the building." Hammond acknowledged he was "pretty scared" and "shook up." Burton demanded the keys to Hammond's vehicle. Croy and Hammond took "everything" out of Hammond's pockets, including his phone, keys, wallet, and cash. Croy took Hammond's keys and ran to his vehicle, while Burton continued to hold something to Hammond's head. . . .
>
> . . . .
> Burton described the male assailant: "I saw a heavy-set man. I guess I don't, maybe a little bit shorter than me, pointing a gun at me. And I just, all I really remember like specifically was the tattoos on his knuckles that was holding the gun." He also testified, "I thought that I had recognized him from somewhere I had been prior one other time, but I wasn't positive if it was the same person or not."
> Once Burton turned his back and got into his own truck, Hammond ran after his vehicle yelling. Someone from the apartment complex told him to be quiet. Hammond yelled his car was being stolen, and the person called the police. Croy and Burton both drove away.

Hammond waited for the police and told them his vehicle, phone, and wallet had been stolen. He did not tell them he had brought a tin of marijuana with him, which had been stolen as well. Hammond was asked if he know who was involved, and he told them Minnie Molly and "mentioned that [he] thought [he] recognized the man holding the gun to [his] head, but [he] wasn't positive if it was who [he] thought it was." He gave the officers a description of the male. An officer drove Hammond to a residence where he thought he had seen the male. However, neither Hammond's vehicle nor any other vehicle he recognized was there at the time.

Police eventually recovered the stolen vehicle, but Hammond's wallet, identification, and phone were never found.

Hammond later called police to report he had seen the man with the gun on television and identified Burton. Hammond also picked Croy out of a photo lineup. Burton and Croy were charged with first-degree robbery. Croy entered into a plea agreement and testified at Burton's trial.

Croy testified she was homeless for a time and Burton allowed her to stay at his residence with him and his girlfriend for some weeks. Croy admitted she was using methamphetamine during this period and had used with Burton. Burton told Croy she needed to "come up with a way to gain money to get them for living at their house, and if I didn't it was or else."

Croy admitted conspiring with Burton to rob Hammond, to stealing items from Hammond while Burton kept him at bay, and to driving off with Hammond's vehicle. She also testified she and Burton drove the respective vehicles to a preplanned meeting place. When they rendezvoused, Burton had a firearm in his truck, which discharged toward her but hit the truck's passenger door.

Burton testified, denying any involvement with either Croy or Hammond.

*State v. Burton*, No. 19-1417, 2021 WL 1904650, at *1–2 (Iowa Ct. App. May 12, 2021) (alterations to text in original).

At the close of trial, the court provided the jury with instructions, and the jury began deliberating. The jury was instructed in instruction no. 19 as follows:

The State must prove all of the following elements of Robbery in the Second Degree:
1. On or about the 8th day of January 2018, the defendant had the specific intent to commit a theft.
2. To carry out that intention or to assist him in escaping from the scene, with or without the stolen property, the defendant:
a. Committed an assault upon Dustin Hammond or

b. Committed an assault by using a dangerous weapon on or displaying a dangerous weapon to, Dustin Hammond or

c. Threatened Dustin Hammond with or purposefully put Dustin Hammond in fear of immediate serious injury.

If the State has proved all of the elements, the defendant is guilty of Robbery in the Second Degree. If the State has failed to prove any one of the elements, the defendant is not guilty of Robbery in the Second Degree, and you will then consider the charge of Robbery in the Third Degree as explained in Instruction No. 20.

Instruction no. 20 stated:

The State must prove all of the following elements of Robbery in the Third Degree:

1. On or about the 8th day of January 2018, the defendant had the specific intent to commit a theft.

2. To carry out that intention or to assist him in escaping from the scene, with or without the stolen property, the defendant committed an assault as is defined in Instruction No. 22.

The next morning, the jury sent the following note to the court:

What are the elements on Robbery in the 2nd degree

Are A, B & C to be considered in their entirety?

Please clarify the diffrence between second & third degree?

After a "rather lengthy discussion off the record" with counsel, the court provided counsel with a revised marshalling instruction for second-degree robbery, instruction no. 19A. The State "agree[d] with the Court's decision to submit a supplemental Instruction 19A that is based on the stock instruction." Defense counsel also agreed, stating, "I believe that instruction that was given was

incorrect.  This corrects that."  The court then instructed the jury to "disregard Instruction No. 19" and provided a "revised" Instruction No. 19A to the jury:

> The State must prove all of the following elements of Robbery in the Second Degree:
> 1. On or about the 8th day of January, 2018, the defendant had the specific intent to commit a theft.
> 2. To carry out that intention or to assist him in escaping from the scene, with or without the stolen property, the defendant:
> a. Committed an assault on Dustin Hammond as defined in Instruction Number 22 and in committing the assault the defendant intended to inflict a serious injury upon Dustin Hammond, cause bodily injury or mental illness to Dustin Hammond, used or displayed a dangerous weapon in connection with the assault, or cause serious injury to Dustin Hammond; or
> b. Threatened Dustin Hammond with or purposely put Dustin Hammond in fear of immediate serious injury.

The court also submitted instruction no. 19B:

> As used in Instruction No. 19A, "bodily injury" means physical pain, illness or any impairment of physical condition.
> As used in Instruction No. 19A, "serious injury" means a disabling mental illness, condition which cripples, incapacitates, weakens or destroys a person's normal mental functions, bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement or extended loss or impairment of the function of any bodily part or organ.

The jury found Burton guilty of second-degree robbery.[1]  On direct appeal, this court rejected Burton's challenge to the sufficiency of the evidence supporting his conviction.  *Burton*, 2021 WL 1904650, at *2–3.

Burton applied for postconviction relief (PCR), raising several pro se claims and a claim related to new evidence, all of which were abandoned or not sufficiently

---

[1] Burton also had a pending first-degree murder charge, stemming from an incident that took place the day after the robbery.  Burton's robbery case went to trial immediately before his murder case.  Following that trial, the jury found Burton guilty of second-degree murder.  This court affirmed his conviction.  *See generally State v. Burton*, No. 19-1754, 2021 WL 2453365 (Iowa Ct. App. June 16, 2021).

developed at trial. Burton also raised various claims of ineffective assistance of counsel. One of those claims challenged trial counsel's failure to "thoroughly evaluate" the jury instructions (resulting in the jury receiving the incorrect instruction, which required the court's correction) and counsel's failure to "request a mistrial" when the jury-instruction error was discovered. The district court rejected Burton's ineffective-assistance-of-counsel claims and denied his application. Burton appeals, challenging the court's ruling on his claim of ineffective assistance of counsel relating to the incorrect jury instruction.

## II.      Standard of Review

"We ordinarily review PCR rulings for correction of errors at law." *Brooks v. State*, 975 N.W.2d 444, 445 (Iowa Ct. App. 2022). "However, when the applicant asserts claims of a constitutional nature, our review is de novo." *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001). Accordingly, "we review claims of ineffective assistance of counsel de novo." *Id.*

## III.      Discussion

To establish ineffective assistance of counsel, Burton must show "(1) counsel failed to perform an essential duty and (2) prejudice resulted." *State v. Keller*, 760 N.W.2d 451, 452 (Iowa 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). On appeal, Burton challenges only the court's ruling on the prejudice prong, claiming the district court "erred in holding [he] was not prejudiced by trial counsel's failure to object to an improper jury instruction." But the court

also found no breach of duty on Burton's claim,[2] which Burton does not challenge, and so relief on his ineffective-assistance-of-counsel claim is precluded. *See State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (noting we "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief"); *Walden v. State*, No. 23-1104, 2024 WL 4220588, at *2 (Iowa Ct. App. Sept. 18, 2024) ("[T]he court also found no breach of duty on Walden's first three claims, which Walden does not challenge and would therefore preclude relief on those claims."); *see also State v. Cook*, 565 N.W.2d 611, 615 (Iowa 1997) ("[T]rial counsel did not breach an essential duty, thus we need not address the prejudice prong of the ineffective-assistance-of-counsel test"). We nevertheless elect to briefly address the prejudice prong, which requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Walker*, 935 N.W.2d 874, 881 (Iowa 2019) (citation omitted).

Burton claims he "was prejudiced by the erroneous instruction" because it "confused the jury and therefore hindered [his] right to be tried by an impartial jury." He also argues "because the erroneous instruction concerned the elements the State must prove beyond a reasonable doubt," the instructional error "was constitutional in dimension." The State counters that Burton "confuses the prejudice standard" by arguing for a preserved-instructional-error-challenge standard to support his ineffective-assistance-of-counsel claim. We agree. "A

---

The court found defense counsel's choice not to move for mistrial was "certainly within the realm of strategic decisions afforded to counsel," and upon our review of the record presented here, we agree.

'presumed-prejudice standard applies to preserved errors in jury instructions.' However, 'an ineffective-assistance-of-counsel claim based on failure to preserve jury instruction error must demonstrate deficiency and prejudice.'" *State v. Kuhse*, 937 N.W.2d 622, 629 (Iowa 2020) (quoting *State v. Lorenzo Baltazar*, 935 N.W.2d 862, 871–72 (Iowa 2019)).

Burton cannot show a reasonable probability that the outcome of his trial would have been different if counsel had moved for a mistrial based on the erroneous instruction. *See State v. Hill*, 449 N.W.2d 626, 629 (Iowa 1989) ("[T]he instruction complained of [must be] of such a nature that the resulting conviction violate[s] due process"). Before the jury reached its verdict, the court withdrew the erroneous instruction and provided the correct instruction. *Compare State v. Maxwell*, 743 N.W.2d 185, 196 (Iowa 2008) ("[W]hen there is no suggestion the instruction contradicts another instruction or misstates the law there cannot be a showing of prejudice for purposes of an ineffective-assistance-of-counsel claim."), *with State v. Leins*, 234 N.W.2d 645, 648 (Iowa 1975) (reversing for new trial when trial court gave an instruction containing two tests, one proper and one improper, and the reviewing court was unable to determine which rule the jury applied).

The revised instruction correctly stated the law, and the evidence presented supported the jury's verdict. *See* Burton, 2021 WL 1904650, at *2 ("Even assuming the jury found Burton was not armed at the time of the robbery, viewing the evidence in the light most favorable to the State, a rational jury could find Burton purposely put Hammond in fear of immediate serious injury. Hammond testified Burton placed a gun to the back of his head and shoved him out of a building at 3:00 a.m., demanding he empty his pockets and give up the keys to his

vehicle. Hammond testified he did not run after his vehicle as Croy began to drive away because Burton had a gun to his head. Only when Burton left did Croy respond. A reasonable jury could have found Burton acted in a manner indicating he was armed in order to put Burton in fear of immediate serious injury."); *see also Lorenzo Baltazar*, 935 N.W.2d at 872 (finding that even where there was outdated language within the jury instruction, the defendant could not show prejudice due to the overwhelming evidence against him). We affirm the denial of Burton's application for PCR.

**AFFIRMED.**